Argued and submitted November 9, 1990, reversed and remanded January 16, 1991

William A. ROBSON,
*Respondent,*

*v.*

KLAMATH COUNTY BOARD OF HEALTH
and Perry Rickard,
*Appellants,*

*and*

Robert BAGGETT,
Jim Rogers, Dr. Jon Wayland, Aaron Abts,
C. E. Chrowl and Joanne Hannigan,
*Defendants.*

(87-275-CV; CA A62221)

804 P2d 1187

Michael L. Spencer, Klamath Falls, argued the cause and filed the briefs for appellants.

Enver Bozgoz, Klamath Falls, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendants[1] appeal a judgment awarding damages to plaintiff. Plaintiff alleged in a 42 USC § 1983 claim that he was employed by Klamath County and that his employment was terminated in violation of his civil rights, because he had exercised his First and Fourteenth Amendments rights by speaking out about matters of public concern. We reverse.

Plaintiff offered evidence that he had been employed as a sanitarian by Klamath County. On January 21, 1987, defendant Baggett, plaintiff's immediate supervisor, implemented a policy regarding restaurants that cater. As part of that policy, he requested that plaintiff call various restaurants, act as if he were a potential customer and ask them to cater parties. If a restaurant agreed, plaintiff was to identify himself and explain the licensing procedure. Plaintiff objected to the request. He submitted a letter to defendant Rickard, the Health Services Administrator, in which he requested written direction from Rickard before making any phone calls.

On February 5, 1987, plaintiff conducted two restaurant inspections, accompanied by a female student nurse. When they returned to the Health Department, Baggett insinuated that plaintiff and the student nurse had engaged in sexual activity.[2] The next day, plaintiff met with a county commissioner and told him about the proposed catering policy

---

[1] Plaintiff's complaint alleged four claims against multiple defendants. Judgment was awarded against Klamath County and defendant Rickard on plaintiff's protected speech claim. Judgment was entered in favor of all defendants on the other claims and all other defendants on the protected speech claim. Only Klamath County Board of Health and Rickard appeal.

[2] At trial, plaintiff testified:

"I had been taking one student nurse out for a week for about three or four weeks, showing them what we do in a restaurant and that for their public health class. And we inspected, I believe, two restaurants that morning. We'd just returned at noon time to the parking lot of Environmental Health. And I was in the Honda Civic, driving, and when we parked, Bob came—it was right at twelve, and Bob came out of the office to go home for lunch and walked over to the car on [the student's] side and I think she just voluntarily rolled down the window and Bob put his head inside the car and was looking at the ceiling and I asked him, you know, what he was looking for. And he said I'm just seeing if there's any footprints on the ceiling and I said, you know, why. And he said to oh to see if you two kids had been good. And he said it in a humorous manner. And—but I didn't think it was funny. And [the student] was very quiet. And Bob didn't introduce himself. When he left she turned to me, and she said who was that and I said that was the director of the Environmental Health."

and the student nurse incident. Approximately two weeks later, Rickard asked plaintiff about the incidents and his taking of his complaint to the commissioner instead of to Rickard. Plaintiff refused to discuss them, and Rickard terminated his employment.

On March 6, the local newspaper published a copy of plaintiff's letter to Rickard. At trial, plaintiff testified that he submitted the letter "because [he] was trying to communicate with someone." The newspaper also published a letter written by the entire Environmental Health staff, which expressed concerns about Baggett's performance as a supervisor. Plaintiff testified: "I felt these two articles more or less would give the public an idea of what the problem was. Why I was terminated." He also testified that the policy regarding calling the restaurants was "wilful deceit" and that he was speaking out on behalf of the public.

■■ At trial, plaintiff asserted that the letter to Rickard and his conversation with the county commissioner were constitutionally protected speech and that he was discharged from employment because of those communications, in violation of 42 USC § 1983. Defendants moved for a directed verdict. The court denied the motion and submitted the claim to the jury.[3] Defendants assign error to this jury instruction:

> "In all employment contracts whether at will such as this one or for a definite term, the employer's interest in running his or her business as he sees fit must be balanced against the interests of the employee in maintaining his employment and the public's interest in maintaining a proper balance between the two. *You have to ask yourself,* based on the evidence that you have heard *whether or not this is a situation where the employee was dismissed because he performed an act that public policy would encourage or refused to do that which public policy would condemn.*" (Emphasis supplied.)

Defendants assert that, by giving that instruction, the trial court gave the jury the responsibility of applying the balancing test in *Pickering v. Board of Education,* 391 US 563, 88 S Ct

---

[3] Defendants' first two assignments assert that the trial court erred in concluding that plaintiff's speech is protected. Those assignments are not properly raised under ORAP 5.45(4). Defendants also assign error to the trial court's denial of their motion for new trial. That is not a reviewable issue, because defendants did not object to the introduction of evidence that prompted them to move for a new trial. *See* ORCP 64B(6); *Bednarz v. Bay Area Motors, Inc.,* 95 Or App 159, 768 P2d 422 (1989).

1731, 20 L Ed 2d 811 (1968), which was error, because it directed the jury to decide an issue of law.[4] We agree. *See Connick v. Myers*, 461 US 138, 148 n 7, 150 n 10, 103 S Ct 1684, 75 L Ed 2d 708 (1983).

■      To determine whether the trial court's error was prejudicial, we must ascertain whether plaintiff's speech was, in fact, protected.[5] That process involves a two-part inquiry. First, we must determine whether it involved a matter of public concern. *Connick v. Myers, supra; Rankin v. McPherson*, 483 US 378, 107 S Ct 2891, 97 L Ed 2d 315 (1987); *see also Shockey v. City of Portland*, 100 Or App 166, 785 P2d 776 (1990). Second, if the speech was in that category, we must apply the *Pickering* balancing test:[6]

"The problem in any case is to arrive at a balance between

---

[4] Immediately before giving the instruction assigned as error, the court charged the jury:

"Plaintiff has a right under the First Amendment of the United States Constitution to exercise freedom of speech. In order for the Plaintiff to prevail on his claim, *you must find that the Plaintiff's protected First Amendment conduct,* that is the expression of public concern *is a conduct that concerns issues about which information is needed or appropriate to enable members of society to make an informed decision about the operation of their governmental agency.* And that Plaintiff's exercise of freedom of speech was a substantial factor or was a motivating factor in Defendant's decision to discharge Plaintiff from his employment." (Emphasis supplied.)

Read together with the excepted instruction, that language indicates that the jury, and not the court, was to determine the issue regarding whether plaintiff's speech was protected.

[5] Plaintiff refers us to *Sykes v. McDowell*, 786 F2d 1098 (11th Cir 1986), where, as here, the trial court erred by submitting to the jury the question of whether the plaintiff engaged in conduct protected by the First Amendment. The court said:

"[B]y submitting [the erroneous jury instruction], the court incurred the risk of creating an uncorrectable [*sic*] error. If the jury had decided against [the plaintiff], the district court could not have determined whether it did so because it concluded the speech was not legally protected—a determination not within the jury's competence. Under the circumstances presented, by submitting the instruction to the jury, [the defendant] could only gain an undue advantage. [The defendant] could have won the lawsuit on an issue that never should have been submitted to the jury. That did not occur. Plain error has not been demonstrated." 786 F2d at 1104.

That case is inapposite, because the court went on to conclude that the plaintiff had engaged in protected First Amendment activities.

[6] Under *Pickering*, the factors to be considered are: (1) the need for maintaining discipline and harmony in the agency; (2) the need for confidentiality of agency affairs; (3) the need to ensure that the employee's ability to perform duties has not been diminished as a result of the employee's having made unfounded statements; and (4) the need to maintain close personal working relationships requiring personal loyalty and confidence.

the interests of the [plaintiff] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 US at 568.

For that analysis, we make " 'an independent constitutional judgment on the facts of the case.' " *Connick v. Myers, supra,* 461 US at 150 n 10 (quoting *Jacobellis v. Ohio,* 378 US 184, 190, 84 S Ct 1676, 12 L Ed 2d 793 (1964); *see also Allen v. Scribner,* 812 F2d 436, *amended by* 828 F2d 1445 (9th Cir 1987).

■      "A matter of public concern" is a matter that fairly relates to political, social or other aspects of the community. It does not include speech relating to purely personal or internal administrative matters. *See Connick v. Myers, supra,* 461 US at 146, 154. We consider plaintiff's motives in making the statements, as well as the subject matter of the statements. *See, e.g., Barkoo v. Melby,* 901 F2d 613, 618 (7th Cir 1990); *Brown v. City of Trenton,* 867 F2d 318, 322 (6th Cir 1989). As one court has said:

> "One of the significant factors to be initially considered in deciding whether the 'speech' relates to 'a matter of public concern' is the subject matter of the speech or action. If the speech relates primarily to a matter of 'limited public interest' and does not 'seek to bring to light actual or potential wrongdoing or breach of public trust,' centering instead on matters primarily, if not exclusively 'of personal interest' to the employee such as employee grievances over internal working conditions, etc., that fact must be weighed in determining whether a matter of true public concern is involved for the 'First Amendment does not require a public office to run as a roundtable for employee complaints over internal office affairs. *Connick* [*v. Myers, supra*], 103 S Ct at 1691.' " *Jurgensen v. Fairfax County, Va.,* 745 F2d 868, 879 (4th Cir 1984).

■      Our review of the record convinces us that plaintiff's statements regarding the caterer licensing policy do not involve a matter of public concern. Plaintiff did not offer any evidence that the policy violated any state or federal law or any code of professional ethics for sanitarians, except that one witness, a sanitarian, testified that, in his personal opinion, the policy was not a "proper order." A letter from the Sanitarian's Registration Board indicated that the policy was not

unprofessional or unethical. The policy has limited public interest, and the communication about it centers primarily on plaintiff's personal standards. Therefore, on this record, we are not prepared to recognize that the letter involved a matter of public concern.

We reach the same conclusion regarding plaintiff's statements pertaining to the student nurse incident. Plaintiff maintains that those statements relate to an instance of "alleged sexual harassment" by defendant Baggett. Even if we accept plaintiff's characterization of the remark, it did not involve a matter of public concern. It is apparent that plaintiff's conversation with the county commissioner was as an aggrieved employee complaining about circumstances of relevance only to him, not as a concerned public citizen informing the public that a state agency is not properly discharging its duties or has engaged in some misfeasance. *See Connick v. Myers, supra,* 461 US at 148.

Because neither of plaintiff's statements involved matters of public concern, we need not apply the *Pickering* balancing test. *See Connick v. Myers, supra,* 461 US at 146; *Wilson v. City of Littleton, Colo.,* 732 F2d 765 (10th Cir 1984). Therefore, we conclude that, as a matter of law, the statements were not protected by the First Amendment. It follows that the trial court's erroneous jury instruction was prejudicial.

Reversed and remanded.