On respondent's petition for reconsideration filed February 20, reconsideration allowed; opinion (105 Or App 213, 804 P2d 1187) modified and adhered to as modified October 16, reconsideration denied December 11, 1991, petition for review pending 1992

William A. ROBSON,
*Respondent,*

*v.*

KLAMATH COUNTY BOARD OF HEALTH
and Perry Rickard,
*Appellants,*

*and*

Robert BAGGETT,
Jim Rogers, Dr. Jon Wayland, Aaron Abts,
C. E. Chrowl and Joanne Hannigan,
*Defendants.*

(87-275-CV; CA A62221)

818 P2d 990

Enver Bozgoz, Klamath Falls, for petition.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., specially concurring.

## EDMONDS, J.

Plaintiff petitions for Supreme Court review of our opinion. 105 Or App 213, 804 P2d 1187 (1991). We treat the petition as one for reconsideration, ORAP 9.15(1), allow it and modify our opinion.

■ Plaintiff first argues that we erred when we held that his statements to a county commissioner regarding a policy implemented by defendant Baggett to ascertain whether restaurants were complying with the Klamath County Health Department's catering licensing procedure were not about a "public concern" and therefore were not protected speech under the First Amendment. We said:

> "Plaintiff did not offer any evidence that the policy violated any state or federal law or any code of professional ethics for sanitarians, except that one witness, a sanitarian, testified that, in his personal opinion, the policy was not a 'proper order.' A letter from the Sanitarian's Registration Board indicated that the policy was not unprofessional or unethical. The policy has limited public interest, and the communication about it centers primarily on plaintiff's personal standards. Therefore, on this record, we are not prepared to recognize that the letter involved a matter of public concern." 105 Or App at 218.

Plaintiff points to the Klamath County Policies and Procedures, which cites the "wilful giving of false information with intent to deceive" as a cause for disciplinary action, and the Code of Ethics of the National Environmental Health Association, which says that there is an obligation to guard the public interest "honestly." The gravamen of the policy that plaintiff complains about is the practice of calling a restaurant, acting as a potential customer and asking it to cater a party. If a restaurant agrees, the sanitarian would identify himself and explain the licensing procedure. On the record before us, we are not persuaded that, as a matter of law, it is unethical for a regulatory agency such as a health department to use covert methods to ferret out violations. Under the circumstances, we conclude that defendants' policy does not implicate a matter of public concern.

Even if the policy does implicate a matter of public concern, plaintiff's report about it is not protected speech. Under *Pickering v. Board of Education,* 391 US 563, 88 S Ct

1731, 20 L Ed 2d 811 (1968),[1] when the Health Department's need to carry out its regulatory functions and plaintiff's failure to follow the prescribed grievance policy are weighed against plaintiff's interest, the balance is struck in favor of defendants. *See, e.g., Czurlanis v. Albanese,* 721 F2d 98 (3rd Cir 1983).

■ Plaintiff also challenges our conclusion that his speech regarding an alleged incident of sexual harassment did not constitute a matter of public concern. We said:

"On February 5, 1987, plaintiff conducted two restaurant inspections, accompanied by a female student nurse. When they returned to the Health Department, [defendant] Baggett insinuated that plaintiff and the student nurse had engaged in [on the job] sexual activity.

"* * * * *

"* * * Plaintiff maintains that [his] statements [regarding the incident] relate to an instance of 'alleged sexual harassment' by defendant Baggett. *Even if we accept plaintiff's characterization of the remark,* it did not involve a matter of public concern. It is apparent that plaintiff's conversation with the county commissioner was as an aggrieved employee complaining about circumstances of relevance only to him, not as a concerned public citizen informing the public that a state agency is not properly discharging its duties or has engaged in some misfeasance. *See Connick v. Myers,* [461 US 138, 148, 103 S Ct 1684, 1690, 75 L Ed 2d 708 (1983)]." 105 Or App at 219. (Footnote omitted; emphasis supplied.)

On reconsideration, we conclude that we should not have accepted plaintiff's characterization.

■ A report about sexual harassment by a public employer *is* a matter of public concern. *Mautlin v. Village of Lodi,* 862 F2d 609, 612 (6th Cir 1988).[2] That speech may be

---

[1] As we said in our opinion, the *Pickering* balancing test requires us to consider "(1) the need for maintaining discipline and harmony in the agency; (2) the need for confidentiality of agency affairs; (3) the need to ensure that the employee's ability to perform duties has not been diminished as a result of the employee's having made unfounded statements; and (4) the need to maintain close personal working relationships requiring personal loyalty and confidence." 105 Or App at 217 n 6.

[2] A discharge from employment on the basis of sexual discrimination is prohibited by state and federal laws. *See* ORS ch 659 and § 703, Civil Rights Act of 1964, Pub L 88-352, 42 USC § 2000e - 2000e-2.

entitled to First Amendment protection, because the speaker is bringing purported wrongdoing to light. In *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 88, 689 P2d 1292 (1984), the court defined sexual harassment as

> " ' "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." * * * In order to constitute harassment, this conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive.'

> " '* * * In proving a claim for a hostile work environment due to sexual harassment, * * * *the plaintiff must show that but for the fact of [his or] her sex, [he or] she would not have been the object of harassment.'*

> " 'In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion. It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment. *However, there may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. In such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment.'* " (*Quoting Henson v. City of Dundee,* 682 F2d 897, 903 (11th Cir 1982)). (Citations omitted; emphasis supplied.)

The student nurse testified that she "would have preferred that comments would have never been made in the first place," and plaintiff testified that he was "embarrassed" by the comments, which suggests that Baggett's conduct may have been offensive. However, the record reveals that neither the student nor plaintiff were objects of the comments because of their sex and that neither of them considered them to be sexual harassment.[3] The student nurse testified that

---

[3] Baggett believed that he was simply commenting on a long-term office joke. He testified:

"[Plaintiff and the student nurse] had been on an inspection at one of the local restaurants.

"And they came driving into the parking lot at the same time that I was walking out of the office into the parking lot. And they pulled up and parked.

"And on the side of the car that the passenger side where [sic] the student nurse was sitting she rolled down the window and I squatted down and I asked

she "passed off [the comments] as * * * inappropriate remark[s] and went on with [her] business." Plaintiff testified that

> "[the commissioner] asked me well what else was going on up there [at the Health Department] and I said—and that's when I related the [student nurse] incident, about *professionalism*. And [he] got real upset. He asked me if she put in a complaint and I said I don't know." (Emphasis supplied.)

Plaintiff related the incident to the commissioner, not because he thought that it was sexual harassment, but because he believed that Baggett's conduct was an example of unprofessional behavior.

■   No First Amendment protection is afforded speech intended to further a private interest that relates to internal administrative matters. *Connick v. Myers, supra,* 461 US at 146, 154. Plaintiff's statements were part of a general complaint regarding Baggett's leadership abilities. Because his report was not protected by the First Amendment, the trial court's erroneous decision to submit to the jury the issue of

---

them how the inspection had gone. And they said fine and she talked, had a dialogue about the inspection.

"During the conversation I glanced up at the ceiling. There had been at one time a boot mark on the ceiling of the car. There had been a joke within the department about the boot mark that was on the ceiling of the car involving my prior supervisor and one of the employes of the department.

"When I looked down at [plaintiff] and the nurse in the car they both looked rather astonished at the fact that I was gazing at the ceiling of the car. I made mention of the fact that the boot prints are gone.

"I realized at that point in time that that wasn't sufficient enough an explanation of why I was looking up there. So I informed them that it was relating to an old joke pertaining to the previous supervisor. We had a little more dialogue."

Defendant Rickard testified:

"[T]he *student nurse* who was with [plaintiff] during the remark incident with [Baggett] was in the [H]ealth [D]epartment today so I called her in to ask her view of the situation.

"She said [Baggett] remarked about mud stains on the dashboard and something about the marks or no marks on the ceiling of the auto. She said that she did read a slight sexual connotation to the remark but was not offended.

"What I do not have in here and what she did say was if I was a younger nurse I may have been but I am not and it did not offend me.

"She stated that [plaintiff] was offended that quote *this was the last straw,* quotation and that he was going to do something about it." (Emphasis supplied.)

applying the balancing test in *Pickering v. Board of Education, supra,* was prejudicial. *See Sykes v. McDowell,* 786 F2d 1098 (11th Cir 1986).

■　　Contrary to the assertion in the concurrence, we do not hold that a report by an employee to a public employer about the possibility of sexual harassment must be legally correct before the report is protected speech. Moreover, our analysis is not at odds with *Connick v. Myers, supra,* as the concurring opinion suggests. *See* 109 Or App at 251. The concurrence acknowledges that, "in determining whether the speech addresses a matter of public concern, we look at the 'content, form and *context* of a given statement * * *.' 461 US at 147." 109 Or App 249. (Emphasis supplied.) Part of the context of the report about the purported sexual harassment is Baggett's statements that gave rise to the complaint. The effect of the concurrer's position would be to deny relief to plaintiff on the basis only of plaintiff's failure properly to express his motivation in his report, even if he had been sexually harassed. That rule of law would work an unfairness on employees against whom discrimination had occurred but who were inept in reporting that fact. We agree with those courts that have said that, to determine whether a report is about a matter of public concern, the plaintiff's motives as well as the subject matter of the statements must be considered. *See, e.g., Barkoo v. Melby,* 901 F2d 613, 618 (7th Cir 1990); *Brown v. City of Trenton,* 867 F2d 318, 322 (6th Cir 1989). The circumstances of the purported harassment are clearly probative of plaintiff's motive.

Petition for reconsideration allowed; opinion modified and adhered to as modified.

**WARREN, P. J.,** specially concurring.

I agree that we need to reconsider this case and that the majority's result is correct. I think that a report about unethical agency action or sexual harassment is a matter of public concern. However, I do not agree with the majority's method of determining whether plaintiff's statements were about unethical behavior or sexual harassment.

Plaintiff's claim against his employer, Klamath County, is that it is liable under 42 USC § 1983 for violating his First Amendment rights by terminating his employment

because he spoke out about his supervisor's policy relating to caterers and an incident involving a student nurse. We must keep that claim clearly in mind and not be drawn away from the gravamen of the complaint to an analysis of whether, in fact, defendants' conduct was either unethical or legally actionable as sexual harassment. That is not the point.

The issue in these civil rights cases is *not* whether the public employer has engaged in the conduct of which plaintiff complained or whether that conduct, if it occurred, actually constitutes wrongdoing or could result in legal liability. The issue is the public employer's suppression of its employee's right to participate in public affairs. A public employer may not, through threat of discharge, prevent or chill its employees' free expression of ideas, whether those ideas are right or wrong, true or false. It is the freedom to speak, even if the speech is false or mistaken, that is protected.[1] *See, e.g., New York Times Co. v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964). "[C]itizens are not deprived of [those] fundamental rights by virtue of working for the government * * *." *Connick v. Myers,* 461 US 138, 147, 103 S Ct 1684, 75 L Ed 2d 708 (1983).

The focus is on what plaintiff *said,* not on the conduct that he was reporting. *See Wren v. Spurlock,* 798 F2d 1313, 1317 n 1 (10th Cir 1986), *cert den* 479 US 1085 (1987). In determining whether that speech addresses a matter of public concern, we look at the "content, form, and context of a given statement * * *." *Connick v. Myers, supra,* 461 US at 147. That requires consideration of all of the circumstances in which the statement was made, which includes "plaintiff's motives in making the statements, as well as the subject matter of the statements." 105 Or App at 218. (Citations omitted.) Although

> "an expression may inherently deal with a matter of public concern, the *Connick* test requires us to look at the *point* of the speech in question: Was it the employee's point to bring wrongdoing to light? Or to raise issues of public concern,

---

[1] I do not deal here with what protection, if any, an employee might have if the speech were recklessly or intentionally false, if the employee had mixed motives for making the statements or if the employer's need for efficiency in providing services for the public outweighs the employee's interests. Those questions are not at issue here.

because they are of public concern? Or was the point to further some purely private interest?" *Hesse v. Board of Education,* 848 F2d 748, 752 (7th Cir 1988), *cert den* 489 US 1015 (1989).

*Accord Roth v. Veteran's Admin. of Government of U.S.,* 856 F2d 1401, 1405 (9th Cir 1988).

Even accepting for the sake of analysis that the *topic* of plaintiff's speech relates to matters that are of public interest, the other circumstances indicate that the *point* of his report was not to speak as a citizen about actual or potential wrongdoing or to address issues that are of public interest *because* they are of public concern. As the Supreme Court explained, a statement "not otherwise of public concern does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Connick v. Myers, supra,* 461 US at 148 n 8.

The circumstances in this case indicate that, although plaintiff's complaint was not purely personal, in the sense that the supervisor's conduct affected the entire office, neither did it rise to the level of a report about a matter of public concern. Plaintiff was engaged in an ongoing dispute with his supervisor about the supervisor's management style, policies and professionalism. Plaintiff spoke to the county commissioner about the policy relating to catering and the student nurse incident as the last resort, to bring attention to what he felt were the supervisor's shortcomings. He related examples of what he viewed to be unethical and improper policies and instances of unprofessional behavior. Because, under all of the circumstances, plaintiff's statement to the county commissioner was directed to a matter of internal office conditions and was not made as a citizen on a matter of public interest, the speech was not about a matter of public concern.

The problem with the majority's analysis is that it concentrates on the conduct that plaintiff reported, rather than on plaintiff's speech. As a result, it erroneously addresses whether the policy relating to caterers is indeed unethical or whether the student nurse incident could legally constitute sexual harassment. *See* 109 Or App 244, 245-46. The focus in First Amendment cases must be on the "content,

form and context" *of the speech,* not on whether the conduct complained of actually occurred or, if it did, whether it constitutes the misconduct that plaintiff says that it does.

The majority's analysis is at odds with *Connick v. Myers, supra,* and other cases dealing with public employees' free speech rights. In *Connick,* for example, the Supreme Court recognized that the employee's speech "touched upon a matter of public concern" when it was merely the asking of a question: Were fellow employees being pressured by their public employer to work on political campaigns for candidates supported by the office? The Court recognized that that *issue,* regardless of the answer to the question, "is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." 461 US at 149. Similarly, in *Pickering v. Board of Education,* 391 US 563, 88 S Ct 1731, 20 L Ed 2d 811 (1968), the Court concluded that a teacher's statements to the press about the school board's allocation of resources, *although false,* raised issues that were a matter of public concern.

If an employee is discharged from public employment for reporting what the employee believes is racial discrimination by the employer, the majority apparently would hold that that discharge is not a violation of the employee's right to speak freely, unless *in fact* the alleged conduct complained of would constitute actionable misconduct. However, in *Givhan v. Western Line Consol. School Dist.,* 439 US 410, 99 S Ct 693, 58 L Ed 2d 619 (1979), the plaintiff *alleged* that the employer had engaged in racial discrimination. In saying that that *allegation* was about a matter of public concern, the Court did not consider its truth or falsity or whether the employer could be held civilly liable for it. *See Connick v. Myers, supra,* 461 US at 146.

The majority says that a public employee's speech cannot be about a matter of public concern unless the employee is legally correct that the conduct that is the subject of the speech is actually wrongful.[2] Because that would chill

---

[2] Although the majority says that it does "not hold that a report * * * about the possibility of sexual harassment must be legally correct before the report is protected speech," 109 Or App at 248, that assertion is inconsistent with the majority's analysis of the case, which tests the conduct complained of against the legal standard

an employee's First Amendment freedom to speak, I cannot join in its analysis. Accordingly, I concur only in the result.

---

for sexual harassment. It is difficult to understand the reason for that analysis, if it is not relevant to the majority's decision. Further, although the majority misreads my concurrence as relying solely on plaintiff's motivation and then chides me for it, the majority, too, considers relevant plaintiff's motive for making the report:

"Plaintiff related the incident to the commissioner, not because he thought it was sexual harassment, but because he believed that Baggett's conduct was an example of unprofessional behavior.

"No First Amendment protection is afforded speech intended to further a private interest that relates to internal administrative matters." 109 Or App at 247. (Citation omitted.)

The majority ends up considering the same circumstances as I would in concluding that plaintiff's speech is not protected. The only point about which we really disagree is the majority's initial step of testing the conduct that is the subject of the speech against the legal standard for wrongfulness. That step is wrong and an improper restriction on employees' First Amendment rights.