Argued and submitted May 14, 1993, resubmitted In Banc March 23, reversed and
remanded in part; otherwise affirmed April 20, petition for review denied
August 23, 1994 (319 Or 625)

Harry M. DEMARAY,
*Appellant,*

*v.*

STATE OF OREGON,
DEPARTMENT OF ENVIRONMENTAL QUALITY;
Fred Hansen; John Loewy;
Donny R. Adair; Tom Bispham; Ed Woods;
George Davis; Doe I; Doe II; Doe III,
*Respondents.*

(90C11264; CA A75793)

873 P2d 403

Michael E. Swaim argued the cause and filed the briefs for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondents. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

LEESON, J.

Deits, J., concurring in part; dissenting in part.

## LEESON, J.

■ Plaintiff brought tort claims against the Department of Environmental Quality (DEQ) and several DEQ employees arising out of his discharge from employment with DEQ. The trial court granted defendants' motion for summary judgment. We review the record in the light most favorable to plaintiff, the nonmoving party, to determine whether defendants are entitled to judgment as a matter of law. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993). We reverse in part and remand.

Plaintiff worked for DEQ for nearly 15 years. During his tenure, he was a vocal critic, both publicly and by way of intra-office memoranda, of DEQ's alleged failure to follow the state's environmental laws.

In 1988, plaintiff became an "open burning coordinator." One of his duties was to send a "Notice of Noncompliance" (NON) to violators of open burning regulations. He was required to submit all NONs and enforcement referrals for review by his supervisor, defendant Davis, before sending them out. In early January, 1990, plaintiff gave seven draft NONs to Davis. Davis edited the drafts in a manner that eliminated references to criminal penalties for noncompliance and revised language dealing with enforcement. He returned them to plaintiff with a memorandum instructing plaintiff not to refer to criminal penalties in subsequent NONs, because DEQ is not a criminal enforcement agency, and instructing plaintiff not to state that a violation would be referred to the enforcement section of DEQ unless he truly intended to make such a referral.

Plaintiff did not send out the NONs as edited by Davis. Instead, he sent Davis a memorandum explaining that he was holding the NONs because he believed that Davis' changes disregarded the specific language of the rules governing DEQ. On January 22, 1990, Davis met with plaintiff to discuss his failure to send out the revised NONs. At that meeting, Davis again instructed plaintiff not to recite criminal penalties in NONs. Two days later, Davis again met with plaintiff and took him to talk to the Enforcement Section manager, Wood. Wood told plaintiff that plaintiff was misinterpreting the rules, and suggested that they talk to the

principal drafter of the rules if plaintiff still had questions. The principal drafter informed plaintiff that Davis' interpretation was correct, and that plaintiff's interpretation was incorrect.

Following that meeting, plaintiff and Davis returned to Davis' office, where plaintiff persisted in questioning Davis about whether he was required to send out the revised NONs as edited. At one point, Davis shrugged his shoulders and threw up his hands. Plaintiff returned to his own office.

Several days later, plaintiff submitted new drafts of the seven NONs to Davis. Four of them still contained the language that Davis had objected to concerning referral to the enforcement section of DEQ, and one contained language concerning criminal penalties. On February 20, 1990, plaintiff was suspended, and, on March 30, he was dismissed. The stated reason was "insubordination, misconduct, and/or other unfitness to render effective service."

Plaintiff filed these claims for (1) violation of his federal constitutional rights, 42 USC § 1983; (2) an unlawful employment practice (whistleblowing), ORS 659.510; and (3) wrongful discharge. Defendants moved for summary judgment on all three claims, on several grounds. The trial court granted the motion "in its entirety."

As an initial matter, plaintiff argues that defendants' motion for summary judgment should have been denied, because evidence not conforming to the requirements of ORCP 47D was attached to the motion. He properly objected below that some of the statements in Davis' affidavit do not appear to be based on Davis' personal knowledge, and that a document attached to the motion was not sworn or certified. We have disregarded the evidence that was improperly attached to the motion. However, the mere fact that evidence not conforming to the requirements of ORCP 47D was attached to the motion does not in itself mean that the trial court erred by granting the motion. The question remains whether defendants showed, through the properly presented evidence, that there are no genuine issues of material fact and that they were entitled to judgment as a matter of law.

We first address whether the trial court erred by granting summary judgment for defendants as to plaintiff's

claim under 42 USC § 1983. Section 1983 provides that a "person" who violates the federal constitutional rights of another while acting under color of state law is liable for redress of that injury.[1] A "person," *i.e.*, one who may be liable under that statute, does not include the state, its agencies or its officials who are sued in their official capacities for retrospective damages. *Will v. Michigan Dept. of State Police*, 491 US 58, 109 S Ct 2304, 105 L Ed 2d 45 (1989); *Anderson v. Dept. of Rev.*, 313 Or 1, 828 P2d 1001 (1992). A state official is, however, a "person" when sued in that capacity for prospective injunctive relief. *Hafer v. Melo*, 502 US ___, 112 S Ct 358, 116 L Ed 2d 301, 308 (1991).

■ As a matter of law, DEQ is not a person under section 1983, and the trial court did not err by granting it summary judgment on that claim. *Will v. Michigan Dept. of State Police, supra.*

The individually named defendants contend similarly that they are not "persons" for purposes of plaintiff's section 1983 claim, because the claim is against them in their official capacities.

■ Plaintiff does not expressly state whether this action is against the individuals in their official or their personal capacities. *See Hafer v. Melo, supra*, 502 US at ___. (116 L Ed 2d at 309.)[2] Several courts have held that, in the absence of a specific contrary pleading, an action against an official is presumed to be an official-capacity action. *See, e.g., Wells v. Brown*, 891 F2d 591, 592 (6th Cir 1989). We need not decide whether to adopt that rule, however, because it is apparent from the relief sought that plaintiff's section 1983 claim is against the individual defendants in their official capacities.

---

[1] 42 USC § 1983 provides, in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] In *Hafer*, the court noted that

"[i]t is obviously preferable for the plaintiff to be specific in the first instance [about the capacity in which an official is being sued] to avoid ambiguity." 502 US at ___ n ___, 116 L Ed 2d at 308 n * (quoting the Third Circuit's opinion in the same case, 912 F2d 628, 636 n 7).

Although in his state law tort claims plaintiff specifically seeks damages, in his section 1983 claim he does not. That claim seeks reinstatement and other employment-related prospective injunctive relief that defendants could provide only in their official capacities.

■ ■ Although the individually named defendants are correct that this is an official-capacity action, they are nonetheless "persons" within the meaning of section 1983, because the claim is for prospective injunctive relief. *Hafer v. Melo, supra.* Moreover, because plaintiff's claim is against the individually named defendants in their official capacities, the personal immunities that they assert are inapplicable. *Kentucky v. Graham*, 473 US 159, 166-67, 105 S Ct 3099, 87 L Ed 2d 114 (1985).

We turn to whether summary judgment was appropriate on the merits of plaintiff's section 1983 claim. Plaintiff's complaint alleges that, during the course of his employment with DEQ, he

"has made a practice of refusing to violate state statute[s] and administrative regulation[s] as [they] relate to his job performance, * * * has disclosed those violations at public meetings of the Environmental Quality Commission, which is the policy-establishing body for the DEQ, and has made his views known in public and to the press. Defendant DEQ's disciplinary actions up to, and including, the present dismissal have been motivated primarily by defendants' desire to punish plaintiff for these disclosures and for his efforts to strictly enforce the state's environmental statutes and regulations."

Plaintiff contends that he was discharged for speaking on matters of public concern, and that his discharge violated his First Amendment rights. *Connick v. Myers*, 461 US 138, 103 S Ct 1684, 75 L Ed 2d 708 (1983). Defendants argue that plaintiff was discharged for insubordination, not for his speech. However, in the light of our standard of review, we must resolve that factual issue in plaintiff's favor, and must accept as true that plaintiff was discharged for his speech.

■ Determination of whether plaintiff's discharge violated his First Amendment rights requires a two-part inquiry:

500

"First, we must determine whether [his speech] involved a matter of public concern. Second, if the speech was in that category, we must apply the *Pickering [v. Board of Education,* 391 US 563, 88 S Ct 1731, 20 L Ed 2d 811 (1968)] balancing test[.]" *Robson v. Klamath County Board of Health,* 105 Or App 213, 217, 804 P2d 1187, *mod* 109 Or App 242, 818 P2d 990 (1991), *rev den* 314 Or 176 (1992). (Citations omitted.)

■ Defendants contend that they are entitled to summary judgment, because the speech that plaintiff claims brought about his discharge did not relate to a matter of public concern. "A matter of public concern" is

"a matter that fairly relates to political, social or other aspects of the community. It does not include speech relating to purely personal or internal administrative matters." *Robson v. Klamath County Board of Health, supra,* 105 Or App at 218.

Plaintiff alleges that he was discharged as punishment for his public criticism of DEQ's supposed failure to follow the law, and for "debating" with his supervisors in an attempt to force DEQ to follow the law, as plaintiff understood it.

■ In *City of Portland v. Shockey,* 313 Or 414, 837 P2d 505 (1992), *cert den ____ US ____,* 113 S Ct 1813 (1993), the court concluded that the plaintiff's speech was not on a matter of public concern. In arriving at that conclusion, it placed great emphasis on the fact that the plaintiff "was not challenging any act of his supervisors as illegal." 313 Or at 430. In this case, that is precisely what plaintiff contends he was doing. We agree with plaintiff that even intra-office debate over whether DEQ is properly enforcing the state's environmental statutes is speech on a matter of public concern.

■ Defendants also argue that, even if plaintiff's speech did address matters of public concern, the speech at issue does not survive the *Pickering* balancing test. The factors to be considered under *Pickering* are: (1) the need for maintaining discipline and harmony in the agency; (2) the need for confidentiality of agency affairs; (3) the need to ensure that the employee's ability to perform duties has not been diminished

as a result of the employee having made unfounded statements; and (4) the need to maintain close personal working relationships requiring personal loyalty and confidence. *Robson v. Klamath County Board of Health, supra,* 105 Or App at 217 n 6. Under that test, "[t]he State bears [the] burden of justifying the discharge on legitimate grounds," *Rankin v. McPherson,* 483 US 378, 388, 107 S Ct 2891, 97 L Ed 2d 315 (1987). Whether defendants have carried that burden is a question for the court.

There is evidence that plaintiff's insubordinate refusal to follow instructions did disrupt harmony at the agency and erode his supervisors' confidence in him. However, plaintiff contends that he was fired for engaging in speech critical of his supervisors, not for his insubordinate refusal to follow instructions. Because we are reviewing a summary judgment for defendants, we must assume that plaintiff was discharged, as he contends, for his speech, rather than for his insubordination. While plaintiff's insubordination may have disrupted the agency, the evidence does not suggest that plaintiff's speech on matters of public concern, by itself, whether public or intra-office, caused disruption.

Moreover, a critical question bearing on the third factor under the *Pickering* balance is the degree to which plaintiff's disagreement with his supervisors about the law was unfounded. Under that factor, if his view of the law was well founded, we would give less weight to defendants' competing interest in ensuring that plaintiff's ability to perform his duties is not diminished by having made unfounded statements. If plaintiff's view of the law was not well founded, then defendants' competing interest would have greater significance.

It is impossible to determine, on the summary judgment record before us, whether plaintiff's view of the requirements of the law was well founded. For example, there is no indication of what statute or regulation plaintiff believes his supervisors required him to violate. Defendants merely point out that plaintiff has not provided that information. Under *Pickering,* defendants bear the burden of justifying the discharge, *Rankin v. McPherson, supra,* and therefore were

obligated to provide it themselves. They do not contend that they lack sufficient knowledge to do so.

■ It bears repeating that we are constrained to assume that plaintiff was not discharged for his insubordination, but for engaging in protected speech. The true reason for plaintiff's discharge remains a material factual issue that must be left for trial. Because defendants have failed to carry their burden of justifying the discharge, assuming that plaintiff was fired for his speech, the trial court erred by granting summary judgment on plaintiff's claim for prospective injunctive relief under section 1983 against the individually named defendants in their official capacities.

We turn now to plaintiff's state law claims, which are asserted against all defendants. We first address whether the trial court erred by granting summary judgment to the individually named defendants on grounds of immunity.

ORS 30.265(1) provides, in part:

"The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only."

Representation or indemnification is available if the claim alleges a tort arising out of an alleged act or omission in the performance of duty. ORS 30.285(1), (3).

■ It appears from plaintiff's complaint that the individually named defendants were acting at all relevant times within the scope of their employment. Therefore, those claims must be "against the public body only." ORS 30.265(7). The trial court did not err by granting the individually named defendants summary judgment on plaintiff's state law claims.

■ DEQ claims immunity under another provision of ORS 30.265:

"(3) Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Discretionary immunity applies to

"decisions involving the making of policy, but not to routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action." *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990).

A decision to discharge a mid-level employee is not a "decision involving the making of policy." DEQ is not entitled to discretionary immunity for that action.

 We therefore address the merits of plaintiff's state law claims against DEQ, beginning with the claim for wrongful discharge. DEQ did not argue below, and it does not argue on appeal, that it is entitled to summary judgment on the merits of that claim. It was, therefore, error to grant summary judgment on that claim.

Finally, we address the merits of plaintiff's claim for whistleblowing. ORS 659.510 provides:

"(1) * * * no public employer shall:

"* * * * *

"(b) * * * take or threaten to take disciplinary action against any employee for disclosure of any information that the employee reasonably believes is evidence of:

"(A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision[.]"

 Plaintiff presented evidence that he was discharged for disclosing information he reasonably believed was evidence of a violation of a statute or regulation by a state agency. Defendants presented evidence to the contrary, thus creating a factual issue for trial. Given the factual dispute, the trial court erred by granting defendants' motion for summary judgment on the whistleblowing claim.

In summary, as to plaintiff's section 1983 claim, DEQ is not a "person" subject to liability under that statute, and the trial court did not err by granting it summary judgment. The individually named defendants are "persons" for purposes of plaintiff's section 1983 claim, and they have

not shown that they are entitled to judgment as a matter of law. The trial court erred by granting them summary judgment on that claim.

As to plaintiff's state law claims, the complaint establishes the state law tort immunity of the individually named defendants. The trial court did not err by granting them summary judgment on plaintiff's state law claims. However, DEQ is not immune from liability for plaintiff's state law tort claims, and it has not shown that it is entitled to judgment as a matter of law. The trial court erred by granting it summary judgment on those claims.

Reversed and remanded as to plaintiff's section 1983 claim against the individually named defendants, and as to plaintiff's state law tort claims against DEQ; otherwise affirmed.

**DEITS, J.,** concurring in part; dissenting in part.

I agree with the majority that the trial court properly granted summary judgment to DEQ on plaintiff's section 1983 claim and to the individually named defendants on plaintiff's state tort law claims, for the reasons stated by the majority. I also agree that the trial court erred in granting summary judgment to DEQ on plaintiff's state tort law claims. I disagree, however, with the majority's conclusion that the trial court erred in granting summary judgment to the individually named defendants on plaintiff's section 1983 claim.

Defendants are entitled to summary judgment on plaintiff's section 1983 claim, because there is no genuine issue of material fact and they are entitled to judgment as a matter of law. ORCP 47C. Here, plaintiff alleges that he was discharged for "debating" the requirements of statutes, rules and regulations with his supervisors. Defendants assert that plaintiff was discharged for insubordination, because he failed to follow the instructions of his superiors, in particular, he failed to comply with his supervisor's instructions regarding four "Notices of Non-compliance" (NONs) prepared by plaintiff. On January 5, 1990, Davis, plaintiff's supervisor, specifically instructed plaintiff to change four NONs to comply with a new agency directive. It is undisputed that plaintiff refused to change the NONs because he believed that the

agency policy violated state statutes, rules, and regulations. Plaintiff decided to hold the NONs and, on January 16, sent an intra-office memorandum to Davis saying:

"Neither you nor I have the right to disregard the specific language of the rules. I strongly object to your counterproductive actions to deter appropriate enforcement of the environmental laws and rules. This job is difficult enough with your cooperation; without it, the job is impossible. Please reconsider the direction of your memo in light of these facts. I am holding the letters that you changed for your response."

As a result of that memorandum, on January 22, Davis met with plaintiff to discuss the new agency directive. At the end of the meeting, Davis instructed plaintiff to change the NONs. Plaintiff persisted in his view of the state rules and regulations. On January 24, Davis again met with plaintiff and informed him that he was misinterpreting the statutes. Plaintiff continued to disagree with his supervisor. Davis and plaintiff then spoke with Davis' supervisor, who also told plaintiff that he was misinterpreting the statutes and rules. Eventually Davis and plaintiff discussed the rules and regulations with the primary drafter of the rules, who also told plaintiff that his interpretation was wrong. Following these discussions, Davis again told plaintiff to send out the revised NONs. It is undisputed that plaintiff failed to send out the revised NONs as instructed. Instead, on February 7, he resubmitted the NONs to Davis without the appropriate changes. In his affidavit, plaintiff does not deny that he failed to comply with Davis' instruction regarding the four NONs.[1]

---

[1] In his reply brief, plaintiff asserts that he did adequately deny refusing to follow his supervisor's instructions by stating that he has never been "insubordinate, unwilling to perform, engaged in intentional misconduct, * * * unfit to render effective service, or committed any malfeasance." However, these are merely conclusory statements that are inadequate to create a genuine issue of material fact. *See Beachcraft Marine Corp. v. Koster,* 116 Or App 133, 840 P2d 1336 (1992) (mere denials are not facts underlying the conclusion that the consideration was adequate and, therefore, do not establish that there is no genuine issue of material fact). In his complaint, plaintiff alleged that Davis had "shrugged his shoulders" in acquiesce with his interpretation of the rules and based on this non-verbal cue, he "reasonably believed that defendant Davis acquiesced in [his] analysis and position." In his affidavit, Davis said that he had no recollection of shrugging his shoulders and that he instructed plaintiff to send out the four NONs with the revisions that Davis had made. Both plaintiff and Davis agree that plaintiff did not send out the four NONs. Instead, plaintiff resubmitted them to Davis. In his affidavit, plaintiff asserts:

"I have never objected to my supervisor materially changing any of my work product, providing the supervisor claimed ownership of it when the change

Davis determined that he had been insubordinate and fired him on that ground.

I agree with the majority that the affidavits create an issue of fact regarding the basis of plaintiff's discharge. However, this factual issue is not material and, therefore, is insufficient to preclude summary judgment. Even if we assume, as plaintiff argues, that he was fired for "debating" the law with his supervisors, defendants are entitled to judgment as a matter of law, because they have established that plaintiff's discharge was legitimate under the balancing test of *Pickering v. Board of Education*, 391 US 563, 88 S Ct 1731, 20 L Ed 2d 811 (1968).

As Justice Unis explained in his dissenting opinion in *Shockey v. City of Portland*, 313 Or 414, 435, 837 P2d 505 (1992), *cert den* ___ US ___, 113 S Ct 1813 (1993):[2]

> "The Supreme Court has framed a two-prong test to determine whether a public employee's speech is protected by the First Amendment. First, the employee's speech must involve a matter of public concern. Second, the employee's First Amendment rights in commenting on a matter of public concern must not be outweighed by the public employer's interest in providing public services efficiently."

I agree with the majority that, based on plaintiff's allegations, at least some of his statements were on a matter of public concern. Even though most of plaintiff's speech was not directed at the public, it did concern whether the agency was complying with its statutory mandates and, based on *Shockey v. City of Portland, supra*, and *Robson v. Klamath County Board of Health*, 105 Or App 213, 804 P2d 1187, *on*

---

contradicted the clear mandates of statute, rule or regulation. I did object, however, to being ordered to sign my supervisor's work as if it were my own. I am a professional in the field of environmental investigation and enforcement, and I believe that I should not be forced to sign a document as if it contained *my* professional judgment, when, in fact, it was the contrary judgment of my supervisor; I feel this is especially so when my supervisor's judgment ran contrary to the laws I was hired to enforce." (Emphasis in original.)

Plaintiff's affidavit does not respond to Davis' sworn testimony that he instructed plaintiff to send out the revised NONs.

[2] Although Justice Unis dissented in *Shockey v. City of Portland, supra*, a majority of the court agreed upon his methodology, but disagreed with his application of that methodology to the particular facts of the case. 313 Or at 429.

*recon* 109 Or App 242, 818 P2d 990 (1991), *rev den* 314 Or 176 (1992), that was a matter of public concern.

However, even assuming that his statements were on a matter of public concern, we must still determine whether his speech is protected under the First Amendment. In *Pickering v. Board of Education, supra*, the court said:

"The problem in any case is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 US at 568.

If the public employer's interest in efficiency outweighs the employee's right to freedom of expression, the employee's discharge on that basis will not offend the First Amendment. *Rankin v. McPherson*, 483 US 378, 107 S Ct 2891, 97 L Ed 2d 315 (1987). The outcome of that balancing test is a question of law for the court. *Connick v. Meyers*, 461 US 138, 148 n 7, 103 S Ct 1684, 75 L Ed 2d 708 (1983); *Robson v. Klamath County Board of Health, supra.*

As the Supreme Court explained in *Rankin v. McPherson*:

"In performing the balancing, the statement will not be considered in a vacuum; *the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose.* * * * We have previously recognized as pertinent considerations *whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty or confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.*" 483 US at 388. (Emphasis supplied; citations omitted.)

In applying the *Pickering* balancing test, we give wide deference to the employer's assessment that an employee's speech may be disruptive of its efficient operations. *Shockey v. City of Portland, supra*, 313 Or at 436 (Unis, J., dissenting); *see also Connick v. Meyers, supra*, 461 US at 151-52.

The Supreme Court emphasized in *Shockey* that the context of plaintiff's speech is the "most important factor," even in the balancing phase of the analysis. In evaluating the

context of plaintiff's statements, we consider all of the circumstances in which the statement was made, including "plaintiff's motives in making the statements, as well as the subject matter of the statements." *Robson v. Klamath County Board of Health, supra,* 105 Or App at 218. Here, there is evidence that the time, manner, and place of plaintiff's speech disrupted defendants' operations, undermined Davis' authority, destroyed close working relationships and impaired work-place discipline. Those factors weigh in favor of concluding that defendants' interest in promoting the efficiency of public services outweighs plaintiff's interest in freedom of expression. Plaintiff's speech occurred, for the most part, at work, during work hours, and was not directed at the public. Additionally, plaintiff has a history of progressive discipline for being argumentative and failing to follow the instructions of his supervisor. That context detracts from plaintiff's First Amendment interests in his speech and squarely implicates defendants' competing interest in the efficiency of its operations.

Defendants' uncontradicted evidence shows that it was justified in determining that plaintiff's speech was disrupting its efficient operations. As plaintiff's affidavit discloses, in his position with DEQ, he was responsible for enforcing the environmental statutes, rules and regulations and for issuing NONs to the public. His persistence in "debating" the new agency directive with his superiors showed an unwillingness to follow the policies of DEQ and interfered with his job duties. Because of his speech, plaintiff delayed the issuance of the NONs by almost 30 days and caused Davis to hold several meetings with him and to enlist the aid of his own superior in an attempt to persuade plaintiff to accept the new agency directive. Here, defendants determined that plaintiff's exercise of his free speech rights was disrupting its efficient operations, because it undermined his superiors' confidence in him, impeded the performance of his duties and/or interfered with the regular operations of the enterprise.

The majority's assertion that there is no evidence "that plaintiff's speech * * *, by itself, * * * caused disruption," 127 Or App at 500, is incorrect. There is evidence, noted above, that plaintiff's *speech* caused his superiors to lose confidence in his ability to carry out the policies of the

agency, that it strained close working relationships, and that it disrupted defendants' operations by causing significant delays.

The majority also incorrectly asserts that

"a critical question bearing on the third factor under the *Pickering* balance is the degree to which plaintiff's disagreement with his supervisors about the law was unfounded. Under that factor, if his view of the law was well founded, we would give less weight to defendants' competing interest in ensuring that plaintiff's ability to perform his duties is not diminished by having made unfounded statements. If plaintiff's view of the law was not well founded, then defendants' competing interest would have greater significance." 127 Or App at 500.

*Pickering* holds that if a plaintiff knew or should have known that the statements were false, that speech would *not* be protected by the First Amendment and the discharge would not implicate constitutional considerations. 391 US at 574 and n 6; *see also, Shockey v. City of Portland, supra,* 313 Or at 434 (Unis, J., dissenting). However, *Pickering* did not hold that if it is established that plaintiff's statements were true, they are automatically protected by the First Amendment. Defendants do not assert that plaintiff was fired for allegedly making false statements. It is immaterial in this case whether plaintiff's view of the law was right or wrong, because defendants are not asserting that plaintiff's ability to perform his job has been diminished by his having made unfounded statements. The issue is whether plaintiff had a First Amendment right to say what he said *when and where* he said it. In other words, we must determine if plaintiff's First Amendment interests in speaking on a matter of public concern outweigh defendants' interests in efficiently performing the public responsibilities entrusted to it. As long as plaintiff is speaking on a matter of public concern, his interest is the same whether he is right or wrong.[3] *See Robson v. Klamath County Board of Health, supra,* 109 Or App at 250-252 (Warren, J., specially concurring).

---

[3] If defendants sought to justify plaintiff's discharge on the ground that he could no longer perform his job duties because of his false statements, as in *Pickering v. Board of Education, supra,* then the truth or falsity of his statements would be a material consideration.

I am not unsympathetic to an employee's right, even obligation, to express views regarding his or her job responsibilities. However, at some point, even a public employer must be entitled to protect the efficiency of its operations. Under these circumstances, defendants' interest in providing public services efficiently outweighed plaintiff's right to freedom of expression. I would affirm the trial court's grant of summary judgment to defendants on the section 1983 claim.

Warren, Riggs and Edmonds, JJ., join in this opinion.