Lois **DRAPER**, Plaintiff,

v.

**ASTORIA SCHOOL DISTRICT NO. 1C, et al., Defendants.**

**No. 97–354–MA.**

United States District Court,
D. Oregon.

Feb. 12, 1998.

Steve Brischetto, Portland, OR, for plaintiff.

Thomas S. Moore and Stefan W. Farr, Portland, OR, for defendants.

## ORDER

MARSH, District Judge.

Magistrate Stewart filed her Findings and Recommendation on January 15, 1998. The matter is now before me. *See* 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). No objections have been timely filed. This relieves me of my obligation to give the factual findings *de novo* review. *Lorin Corp. v. Goto & Co., Ltd.,* 700 F.2d 1202, 1206 (8th Cir. 1983); *see also Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983) Having reviewed the legal principles *de novo,* I find no error.

Accordingly, I ADOPT Magistrate Stewart's Findings and Recommendation that defendants' motion for partial summary judgment be granted in part and denied in part as follows: (1) denied as to claim one (42 U.S.C. § 1983); (2) granted as to claim two (ORS 659.510) to the extent that the claim for punitive damages is stricken and otherwise denied; (3) granted as to claim three (Wrongful Discharge) on the basis that the individual employees are not proper defendants and § 1983 provides an adequate remedy.

## CONCLUSION

Based on the foregoing, I ADOPT Magistrate Stewart's Findings and Recommendation (# 49).

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS

STEWART, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Lois Draper ("Draper") brings this action against defendant Astoria School District No. 1C ("School District") and three School District employees, defendants Beverly Reichen, Beverly Sept, and Len Carpenter. Draper alleges claims for violation of 42 USC § 1983 (deprivation of First Amendment rights under color of state law) and ORS 659.510 (Oregon "Whistle Blower" law), and for common law wrongful discharge. This court has jurisdiction over the federal

law claim under 28 USC § 1331, and supplemental jurisdiction over the state law claims under 28 USC § 1367. Presently before the court is defendants' motion (docket # 29) for partial summary judgment. For the reasons set forth below, this court recommends that the motion be granted in part and denied in part.

### STANDARDS

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id* at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the nonmoving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 630–31. However, when the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.,* 818 F.2d 1466, 1470 (9th Cir. 1987), *cert denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id* at 1468.

### DISCUSSION

#### I. *Background*

Plaintiff Draper was employed as a special education teacher for defendant Astoria School District from December 1993 until September 1995, and also during part or all of the 1996–97 school year. At all relevant times, defendant Reichen was the School District's Director of Special Education, defendant Sept was Principal of Astoria Middle School, and defendant Carpenter was Superintendent of the School District. Draper was not a tenured teacher. Rather, she was employed under a succession of renewable one-year contracts. She also was covered by a collective bargaining agreement ("CBA").

Draper allegedly became a burr under defendants' collective saddles because she repeatedly complained about inadequate programs, supplies, funding, and related matters, and informed the parents of students with disabilities about certain legal rights they had in connection with special education programs. Draper alleges defendants then targeted her for harassment, which resulted in her filing nine labor grievances in a comparatively brief period of time.

On or about September 14, 1995, defendant Carpenter recommended, and the School Board then voted, to terminate Draper's contract, allegedly because she had failed to timely complete course work required to maintain her certification as a special education teacher. Draper attributes the delay to health problems stemming from defendants' campaign of harassment against her. Draper also contends that the certification problem was merely a pretext to conceal defendants' discriminatory motive for terminating her. She alleges that the School District previously had endorsed requests by other similarly situated teachers for an emergency certification pending completion of the required course work but refused to do the same for her because of defendants' discriminatory animus. In November 1995, defendant allegedly refused to offer Draper employment for which she was qualified and had applied, electing instead to re-advertise the position.

Draper filed a labor grievance. In May 1996, an arbitrator ruled in Draper's favor and ordered her reinstated with back pay. It appears that Draper was re-hired for the 1996–97 school year. On March 10, 1997,

Draper filed this action. Shortly thereafter, Draper resigned her employment with the School District. Draper does not contend that she was terminated or constructively discharged in 1997, but does seek, *inter alia,* damages for "diminished earning capacity" attributable to emotional distress allegedly caused by defendants' conduct.

## II. *Wrongful Discharge (Third Claim)*

### A. *Individual Defendants*

■ The individual defendants seek summary judgment on the third claim on the basis that the School District is the only proper party in an action subject to the Oregon Tort Claims Act ("OTCA"), ORS 30.260 to ORS 30.300. Draper argues that the OTCA is inapplicable to this claim because the individual defendants were acting outside the scope of their employment or duties. However, the question is moot since, under Oregon law, the employer is the only proper defendant in a claim for common law wrongful discharge. *Schram v. Albertson's, Inc.,* 146 Or.App. 415, 426, 934 P.2d 483 (1997) (individual supervisors are not personally liable). Consequently, this claim must be dismissed as to defendants Carpenter, Reichen, and Sept.

### B. *Damages Against the School District*

■ The OTCA bars an award of punitive damages in an action against a public body for claims within the scope of the OTCA. ORS 30.270(1) and (2). A common law tort claim for wrongful discharge is subject to the OTCA. *See* ORS 30.260(8), 30.265(1). Accordingly, the prayer for punitive damages on this claim must be stricken. In addition, the amount of compensatory damages that plaintiff may recover on this claim is limited by the OTCA's cap on damages set forth in ORS 30.270.

### C. *Preemption*

■ The School District contends that the wrongful discharge claim is preempted by § 301 of the National Labor Relations Act, 29 USC § 185(a) ("NLRA"), because Draper was covered by and pursued her remedies under the collective bargaining agreement. Oregon courts have previously rejected this very argument. *Coulter v. Construction & General Laborers Union Local 320,* 107 Or.

App. 522, 812 P.2d 850 (1991), held that a wrongful discharge claim is not preempted by a collective bargaining agreement because the right in question did not arise from that agreement and the parties could not have lawfully bargained for an employee to be sexually harassed.

Whether a federal law preempts a state law ultimately is a question of federal law (although the federal court may properly consider any limiting construction the state courts have given to the challenged state law). *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213–14, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Consequently, the Oregon court's decision in *Coulter* is not binding here. Nevertheless, this court is persuaded by *Coulter's* reasoning on this particular point. Resolution of this case does not turn upon an interpretation of the collective bargaining agreement. Moreover, since the right in question is one of paramount public policy in this state, for the protection of which the Oregon courts have fashioned a remedy in tort rather than let it go unprotected, the right is not one that could be "bargained away by [Draper's] Union in return for an extra twenty-five cents an hour in wages or two additional days of sick leave." *Krahel v. Owens–Brockway Glass Container, Inc.,* 971 F.Supp. 440, 452 (D.Or.1997). Thus, the wrongful discharge claim is not preempted by § 301 of the NLRA.

### D. *Failure to State a Claim*

The School District argues, in various fashions (*e.g.,* preemption, *res judicata, etc.*), that Draper cannot pursue a wrongful discharge claim because she has already obtained a remedy through the grievance process. Although not specifically phrased as such, defendant is essentially questioning whether a common law wrongful discharge claim is appropriate if the employee already has alternate claims for the same conduct which provide an adequate remedy. The Oregon courts have issued conflicting statements in this regard. This court must reconcile those inconsistencies to determine whether the tort of wrongful discharge is available in this instance.

## 1. *Development of this Tort in Oregon*

In Oregon, the tort of wrongful discharge was established to serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons 'for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct. *See Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 351–52, 563 P.2d 1205 (1977); *Sheets v. Knight*, 308 Or. 220, 230–31, 779 P.2d 1000 (1989) (summarizing prior cases.)

To date, Oregon courts have identified two circumstances that implicate this tort: (1) discharge for exercising a job-related right of important public interest, and (2) discharge for complying with a public duty. *Sheets*, 308 Or. at 230–31, 779 P.2d 1000. Examples of the former include discharge for filing a worker's compensation claim, *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978), and resisting sexual harassment, *Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 689 P.2d 1292 (1984). Examples of the latter include discharge for serving on jury duty, *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975), for reporting patient abuse at a nursing home, *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or.App. 107, 684 P.2d 21 (1984), *Hirsovescu v. Shangri–La Corp.*, 113 Or.App. 145, 831 P.2d 73 (1992), for reporting violations of drug inventory and record keeping requirements at a pharmacy, *Dalby v. Sisters of Providence in Oregon*, 125 Or.App. 149, 865 P.2d 391 (1993), and for refusing to sign a false report regarding a fellow employee's work-related conduct, *Delaney v. Taco Time Int'l, Inc.*, 297 Or. 10, 16–17, 681 P.2d 114 (1984). *See also Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee fired for refusing to follow his employer's instructions to testify falsely under oath) (cited with approval in *Delaney* ).

Draper's wrongful discharge claim is premised on the theory that she was discharged for exercising her First Amendment right to complain about the School District's special education programs, for reporting inadequacies in the programs, and for advising the parents of special education students about their legal rights. Assuming the speech in question concerned issues of public importance, then Draper's claim seems to fits within the scope of the tort of wrongful discharge.[1]

However, no Oregon case has specifically addressed whether this tort should be expanded to encompass a claim by an employee who is not an at-will employee and who may obtain a remedy for the same alleged conduct through alternative claims for breach of contact and (in this instance) violation of 42 USC § 1983.

The first Oregon case to formally recognize the tort of wrongful discharge was *Nees*, 272 Or. 210, 536 P.2d 512, decided in 1975. Two years later in *Walsh*, the Oregon Supreme Court expounded upon the reasons for that decision:

> In *Nees* . . . we held that the community's interest in having citizens serve on juries was sufficiently great that employers could not be allowed to discharge employees solely for refusing to ask to be excused from jury duty. *Because no other remedy existed* for the wrongfully discharged employee, we allowed the employee to recover compensatory damages in tort.

*Walsh*, 278 Or. at 351, 563 P.2d 1205 (emphasis added.)

In *Walsh*, although the court again found that a strong public interest was implicated (reporting health and safety violations in the workplace), it nonetheless declined to allow the employee to pursue a wrongful discharge claim because he already had "a remedy under existing law for his wrongful discharge." *Id.* That remedy was a federal statute permitting the employee to file a complaint with the Department of Labor which, if it found the complaint to be justified, could commence an action for reinstatement and back pay. *Id* at 352, 563 P.2d 1205. The court described the availability of this alternate remedy as the "one decisive difference" from *Nees* and concluded that the "existing remedies are adequate to protect

---

1. Defendants have not questioned that the conduct alleged is within the parameters of the tort of wrongful discharge.

both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems.... Therefore, we find it unnecessary to extend an additional tort remedy to cover this kind of situation." *Id* at 352–53, 563 P.2d 1205.

Notably, *Walsh* did not ask whether the statutory remedy was identical in all respects to the tort remedy (it wasn't), or whether the statutory remedy was intended to displace the tort remedy (and clearly it was not, since the tort remedy did not even exist when the statutory remedy was established.) Rather, *Walsh* was premised on the adequacy of an existing remedy to protect the public interests at issue.

For the most part, subsequent Oregon cases have adhered to the view that the courts will not "recognize an additional common law remedy of wrongful discharge" if "existing remedies adequately protect the employment related right." *Carlson v. Crater Lake Lumber Co.,* 103 Or.App. 190, 193, 796 P.2d 1216 (1990). However, the failure of some published decisions to strictly adhere to this position has generated considerable confusion over the scope of this tort.

In 1978 in *Brown v. Transcon Lines,* 284 Or. 597, 588 P.2d 1087 (1978), the Oregon Supreme Court was again confronted with the question of whether an existing remedy adequately protected the rights in question. *Brown* seemingly deviated from *Walsh* and *Nees* by framing the question in terms of statutory preemption, specifically, whether there was proof of express or implied legislative intent to abrogate or supersede a previously existing common law remedy. *Id* at 602, 610, 588 P.2d 1087. In so doing, *Brown* relied upon the "general rule [that] if a statute which provides for a new remedy shows no intention to negate, either expressly or by necessary implication, the new remedy will be regarded as merely cumulative, rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy." *Id* at 610–11, 588 P.2d 1087.

While that general rule applies to most cases, the tort of wrongful discharge is not an ordinary tort. It never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available. *Walsh,* 278 Or. at 351–53, 563 P.2d 1205.[2]

*Brown* shifted the focus of the inquiry from the *adequacy* of existing remedies to the legislative intent in enacting a particular remedy. *Brown*'s inquiry as to the legislative intent is certainly appropriate, at least as the first step in analyzing whether a wrongful discharge claim is available in a particular instance. If a court concludes that by enacting a particular remedy the legislature specifically intended to abrogate all common law remedies and to create an exclusive remedy, then the inquiry is at an end. However, *Brown* failed to complete the remaining step in the analysis. Even if the legislature did not specifically intend to abolish all common law remedies, the existing remedies may nevertheless be adequate to vindicate the public interest at issue, in which case it is "unnecessary to extend an additional tort remedy [for wrongful discharge] to cover this kind of situation." *Walsh,* 278 Or. at 352–53, 563 P.2d 1205.

Moreover, because the tort of wrongful discharge was first recognized in Oregon in 1975, it made little sense to inquire, as *Brown* did, whether the legislature had intended to abrogate that tort when it established the statutory remedy in 1973. If an intent to abrogate was the only standard, then every statutory remedy in existence in 1975 fails the test. By its own terms, the test invoked by *Brown* must apply solely to "a new remedy" created by a statute that post-dates the establishment of the wrongful discharge tort in 1975. *Brown,* 284 Or. at 610, 588 P.2d 1087.

*Brown* sought to distinguish *Walsh* on the ground that the alleged reason for the employee's discharge was not the same in the

---

**2.** The concept of an interstitial remedy that exists only in the absence of other remedies is not novel. For instance, injunctive relief often is not available when there is an adequate remedy at law. A party to a valid express contract ordinarily may not recover on a theory of unjust enrichment even though that theory might provide a more favorable remedy in a particular case. *Gillman v. Emel,* 89 Or.App. 153, 156, 747 P.2d 390 (1987).

two cases, but that distinction is without a difference. In each case, the court determined that the discharge offended public policy and fell within the scope of this tort. Alternatively, *Brown* suggested that *Walsh* was distinguishable because the employee in Walsh had an adequate alternative remedy, while in *Brown* the existing remedy was inadequate. Having said that, though, *Brown* had now come full circle. It was the efficacy of the existing remedy that distinguished *Walsh* from *Brown*, and not the mere absence of legislative intent to supplant a tort remedy that did not even exist when the statutory remedy was created.

In its next important decision concerning this tort in 1984, the Oregon Supreme Court summarized the standards governing the tort of wrongful discharge and reiterated that "where an adequate existing remedy protects the interests of society ... an additional remedy of wrongful discharge will not be accorded." *Delaney*, 297 Or. at 16, 681 P.2d 114. It made no mention of the need to find the absence of a legislative intent to abrogate a common law remedy.

Yet later that same year in *Holien*, the Oregon Supreme Court returned to the two-step analysis utilized in *Brown*, reasoning that an at-will employee can bring a common law wrongful discharge claim for termination in retaliation for resisting sexual harassment "unless the provisions of ORS chapter 659 demonstrate the legislature's intent *not only* to provide what it considered to be adequate remedies to an employe such as plaintiff, *but [also]* by implication show a legislative intent to abrogate or supersede any common law remedy for damages." *Holien*, 298 Or. at 90–91, 689 P.2d 1292 (emphasis added). That statement cannot be reconciled with *Walsh* or *Delaney*:[3]

Having framed the question in this manner, *Holien* then reached the only answer possible: in enacting ORS chapter 659, the legislature could not have intended to abrogate the common law tort of wrongful discharge because the legislature was then unaware that such a remedy existed. *Id* at 96,

689 P.2d 1292. That is the inevitable result of framing the question in this manner, since existing remedies typically pre-date the recognition of this tort.

However, despite having asserted that a claim for wrongful discharge is not barred by the existence of an adequate remedy absent a specific legislative intent to abrogate common law remedies, *Holien*—as in *Brown*—proceeded to consider the adequacy of the existing remedies anyway, concluding that they "fail to capture the personal nature of the injury" in this particular circumstance. *Id* at 97, 689 P.2d 1292. The logical inference is the court was not comfortable with the analytical framework it had announced. This additional analysis (of the adequacy of the remedy) would be superfluous if the inquiry were limited to legislative intent to abrogate, but would be essential if in fact the court was applying a two-step analysis under which a claim for wrongful discharge is unavailable if (1) the legislature specifically intended to abrogate common law remedies by establishing an exclusive remedy, or, (2) if an "adequate existing remedy [already] protects the interests of society" hence eliminating the need for "an additional remedy of wrongful discharge." *Delaney*, 297 Or. at 16, 681 P.2d 114.

In subsequent cases, the Oregon courts have continued to chart an erratic course, sometimes focusing on the adequacy of the remedy, and other times focusing on the legislative intent to abrogate all other remedies. However, in every instance where the *court found an absence of legislative intent to abrogate the common law remedies, the court also found that the statutory remedy was inadequate.*

In *Anderson v. Evergreen Int'l Airlines, Inc.*, 131 Or.App. 726, 734, 886 P.2d 1068 (1994), the Court of Appeals summarized the rule as follows:

> The availability of a common law remedy [for wrongful discharge] is further conditioned upon the absence of adequate stat-

---

3. Justice Linde did note the discrepancy. He opined that "it is inaccurate that a court will weigh whether another remedy is 'adequate' in order to determine whether the employer's act is a tort ... [Rather,] the 'adequacy' of these other remedies is relevant only to determining whether the legislature likely intended to make them exclusive." *Holien*, 298 Or. at 101, 689 P.2d 1292 (Linde, concurring.) None of the other six Justices joined Justice Linde's opinion.

utory remedies: "[W]here an adequate existing remedy protects the interests of society *** an additional remedy of wrongful discharge will not be accorded." *Delaney v. Taco Time Int'l, supra,* 297 Or. at 16, 681 P.2d 114; *see Walsh v. Consolidated Freightways,* 278 Or. 347, 563 P.2d 1205 (1977). Thus, the availability of an adequate statutory remedy precludes an otherwise sufficient common law wrongful discharge claim. *Holien v. Sears, Roebuck and Co., supra,* 298 Or. at 97, 689 P.2d 1292; *Farrimond v. Louisiana–Pacific Corp.,* 103 Or.App. 563, 566, 798 P.2d 697 (1990).

It made no mention of legislative intent to abrogate common law remedies.

Similarly, in *Rauda v. Oregon Roses, Inc.,* 147 Or.App. 106, 109, 935 P.2d 469 (1997), a different panel of the Court of Appeals opined that in ascertaining whether an employee has stated a claim for common law wrongful discharge, "the proper focus is on whether a cognizable public policy that expresses a right of important public interest would be thwarted if an employer is allowed to discharge an employee *without liability.*" (Emphasis added). The inference is that the public interest is protected if the employee otherwise has an adequate remedy.

Likewise, *Embry v. Pacific Stationery & Printing Co.,* 62 Or.App. 113, 116–17, 659 P.2d 436 (1983) (affirming dismissal of action), distinguished *Nees* (the case that established the tort of wrongful discharge in Oregon) on grounds the employee in *Nees* was an at-will employee who would have been "without a remedy if she could not bring an action for wrongful discharge," while the employee in *Embry* was covered by a collective bargaining agreement and therefore had an alternative remedy.

On the other hand, *McCool v. Hillhaven Corp.,* 97 Or.App. 536, 540, 777 P.2d 1013 (1989) (*en banc* ), focused on legislative intent to abrogate, finding no indication that "the legislature was aware of or intended to abrogate any common law right of action that an employee might have against an employer for a retaliatory discharge. We will not read such a limitation into the statute without its containing a clear statement to that effect. We also conclude that the statutory remedy is inadequate." *McCool* therefore is not in-

consistent with the two-step analytical method (asking whether the legislature specifically intended to abrogate the common law remedy, or if there is an adequate existing remedy).

*Farrimond v. Louisiana–Pacific Corp.,* 103 Or.App. 563, 798 P.2d 697 (1990), seemingly embraced both formulations of the rule. Relying on *Walsh,* it first announced that "because we conclude that the statutory remedy is adequate, we hold that it is exclusive." *Id* at 566, 798 P.2d 697. On the very next page, however, it declared that "[a]lthough the statute does not expressly state that it is intended to supersede the common law remedy, the legislature's adoption of virtually all remedies that would have been available at common law lead[s] us to conclude that it intended the statutory remedy to be exclusive." *Id* at 567, 798 P.2d 697. One page later, *Farrimond* explained that statutory remedies are exclusive only if they are adequate, and, because the remedy was adequate, "we conclude that the legislature intended the statutory remedy to be exclusive." *Id* at 568, 798 P.2d 697.

In attempting to navigate a course through the confusing landscape of Oregon appellate cases on wrongful discharge, this court observes that the underlying purpose of that tort in this state is not to vindicate the individual interests of the employee by assuring that he or she receives the maximum possible recovery, but rather to protect important public policies by punishing conduct that thwarts those interests. *See Nees,* 272 Or. at 218, 536 P.2d 512 (injury was not to the employee but to the "community's interest in having its citizens serve on jury duty"); *Delaney,* 297 Or. at 14–16, 681 P.2d 114 (distinguishing private and public interests, with only the latter being within the scope of tort); *Cross v. Eastlund,* 103 Or.App. 138, 796 P.2d 1214 (1990) (employee discharged for being pregnant did not state a claim for wrongful discharge because she was asserting only a private interest).

Given the stated purpose of this tort in Oregon, and given that it was created to establish only a narrow exception to the employment-at-will doctrine, this court concludes that a claim for common law wrongful discharge is not available in Oregon if (1) an existing remedy adequately protects the pub-

lic interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate). This court will follow that view until the Oregon Supreme Court clarifies the governing standards.

This formulation is the only one consistent with the results and analysis actually undertaken in each of the Oregon cases cited above (notwithstanding some contrary statements of the rule in certain opinions.) In each instance where an Oregon court permitted a wrongful discharge claim, it considered both prongs of this analysis, concluding that the legislature did not intend to create an exclusive remedy and also that the existing remedies were inadequate. This court is unaware of any instance in which the Oregon courts have found that the existing statutory remedies were adequate, but nevertheless permitted a wrongful discharge claim to proceed because of insufficient evidence that the legislature specifically intended to abrogate common law wrongful discharge claims.

The court will now examine the alternative remedies available to Draper.

### a. § 1983 Remedy

 As a general rule, a § 1983 remedy supplements, rather than supplants, any available state law remedies. *See Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds by Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Nevertheless, under Oregon law, an adequate existing federal remedy may bar a common law wrongful discharge claim. Walsh, 278 Or. at 352, 563 P.2d 1205.

A § 1983 claim will not always provide a remedy adequate to preclude an action for wrongful discharge. For instance, a § 1983 claim ordinarily is unavailable against private employers. It also is subject to unique defenses, such as qualified immunity. On the facts of this particular case, however, § 1983 does provide an adequate remedy. All de-

fendants admittedly acted under color of state law. For the reasons set forth later in this opinion, it appears that defendants will not be entitled to qualified immunity (assuming, of course, that Draper can prove her allegations). The measure of damages under § 1983 is more generous than it would be under a wrongful discharge claim, since § 1983 claims against public bodies are exempt from the damages cap established by the OTCA. *Rogers v. Saylor,* 306 Or. 267, 277–78, 760 P.2d 232 (1988). In addition, 42 USC § 1988 provides for an award of attorney fees. Moreover, unlike a wrongful discharge claim, Draper can pursue her § 1983 claims against the individual defendants and may also seek punitive damages against them. The standard of proof (preponderance of the evidence) is the same under both claims, as is the statute of limitations (two years under either theory).

Finally, for purposes of this case, the elements of Draper's *prima facie* case are substantially similar for both claims. For each claim, Draper will have to prove an adverse employment action (the termination), that she engaged in protected activity, and causation (that she was terminated in retaliation for having engaged in that protected activity). Likewise, to prevail on her § 1983 claim, Draper will have to demonstrate that the speech in question concerned issues of public importance. See Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Shockey v. City of Portland,* 313 Or. 414, 424–31, 837 P.2d 505 (1992). Given the nature of her allegations in this particular case —and this may not be true in every wrongful discharge case—Draper will have to satisfy essentially the same "public importance" standard in order to establish her *prima facie* case of wrongful discharge. *See Delaney,* 297 Or. at 14–16, 681 P.2d 114 (distinguishing private and public interests, with only the latter being within the scope of tort); *Cross,* 103 Or.App. 138, 796 P.2d 1214 (same).[4]

---

**4.** Another branch of this tort is based upon a discharge for exercising certain job-related rights. *Sheets,* 308 Or. at 230–31, 779 P.2d 1000. That is not an issue here. Rather, Draper contends she was discharged for having protest-

ed deficient programs and funding (and by implication violations of laws protecting students with disabilities) and for informing the children's parents of their legal rights.

*Shockey,* 313 Or. 414, 837 P.2d 505, is not to the contrary. It concluded that the employee's speech did not concern matters of public importance, but was of only personal concern, and thus could not sustain a § 1983 claim for violation of First Amendment rights. *Shockey* nevertheless affirmed the jury's verdict against the city on the claim for wrongful discharge. In so doing, however, the court emphasized that it was addressing only the specific assignments of error asserted by the city and did not necessarily agree that the employee had established all elements of his *prima facie* case of wrongful discharge. *Shockey,* 313 Or. at 423 n. 7, 837 P.2d 505. The inference is that the court may have been prepared to overturn the jury's verdict on the wrongful discharge claim for the same reason that it set aside the jury's verdict on the First Amendment claim, but stayed its hand because that argument was not preserved for appeal. *Id.* Consequently, *Shockey* does not negate this court's conclusion that the elements of Draper's *prima facie* case are substantially the same for both her § 1983 and wrongful discharge claims. If Draper cannot prevail on her § 1983 claim, then this court does not see how she could prevail on her wrongful discharge claim.

This court concludes that Draper has an adequate remedy under § 1983 and declines to provide her with an additional tort remedy that (at least in this case) is essentially duplicative of the § 1983 remedy. Accordingly, defendants' summary judgment motion should be granted with respect to the wrongful discharge claim.

### b. Breach of Contract Remedy

Unlike the plaintiffs in almost all of the wrongful discharge cases previously cited in this opinion, Draper was not an at-will employee. She had an employment contract, albeit of limited duration, and was covered by a collective bargaining agreement. If Draper was wrongly terminated, she had a remedy in contract (whether in the form of an action for breach of contract or the grievance procedures established by the CBA).[5] The question presented here is whether an employment contract constitutes an adequate

remedy which precludes the employee from recovering tort damages in lieu of or in addition to her contractual remedies.

Under Oregon law, a mere breach of contract by itself does not constitute a tort. *Georgetown Realty, Inc. v. Home Ins. Co.,* 313 Or. 97, 106, 831 P.2d 7 (1992). In addition, Oregon courts have by-and-large resisted attempts to append tort remedies to contractual claims. Such theories as "tortious breach of contract" and "tortious breach of the covenant of good faith and fair dealing" have gained only a narrow toehold in this state, having been limited either to insurance contracts or fiduciary relationships. *See, e.g., Norwood v. Atlantic Richfield Co.,* 814 F.Supp. 1459, 1467–68 (D.Or.1991); *Uptown Heights Associates Ltd. Partnership v. Seafirst Corp.,* 320 Or. 638, 648–50, 891 P.2d 639 (1995); *Santilli v. State Farm Life Ins. Co.,* 278 Or. 53, 562 P.2d 965 (1977). *See also Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 900 P.2d 669 (1995) (overruling prior cases that had expanded this tort in California).

Nevertheless, there is no *per se* rule that forbids a party to recover in tort merely because that party might also have had a contractual remedy. *Georgetown Realty,* 313 Or. at 106, 831 P.2d 7. Thus, at least in some instances, a party may recover tort damages so long as the claim is based upon the breach of a legal duty that exists independently of the contract. *Id. See also Hampton Tree Farms, Inc. v. Jewett,* 320 Or. 599, 617, 892 P.2d 683 (1995); *Harper v. Interstate Brewery Co.,* 168 Or. 26, 36–37, 42, 120 P.2d 757 (1942). The tort of common law wrongful discharge satisfies that standard.

However, wrongful discharge is not an ordinary tort. From its inception in Oregon, the tort of wrongful discharge has been regarded as a narrow exception to the at-will employment doctrine. *See, e.g., Sheets,* 308 Or. at 229–31, 779 P.2d 1000 (recounting history of this tort); *Holien,* 298 Or. at 83, 689 P.2d 1292 (characterizing tort of wrongful discharge as a "public policy exception to

---

5. And, in fact, Draper availed herself of the grievance procedure and was reinstated with back pay.

the harshness of the 'at-will' rule"); *Delaney*, 297 Or. at 14–16, 681 P.2d 114 (wrongful discharge is limited exception to at-will employment rule). The primary impetus for the development of this tort was the recognition that if the court did not establish such a right of action as a matter of public policy, "the plaintiff would have had no remedy whatsoever." *Holien*, 298 Or. at 83, 689 P.2d 1292. *See also Walsh*, 278 Or. at 351, 563 P.2d 1205 (recovery of damages was permitted in *Nees* only "[b]ecause no other remedy existed for the wrongfully discharged employee."); *Nees*, 272 Or. at 219, 536 P.2d 512 (remedy must exist because employer cannot be "permitted with impunity to discharge an employee for fulfilling her obligation of jury duty").

This court has found no published Oregon cases specifically addressing the question of whether an employee who is covered by an employment contract that prevents her from being discharged without just cause may nevertheless assert a tort claim against her former employer for common law wrongful discharge. In *Embry*, 62 Or.App. at 116, 659 P.2d 436, the Oregon Court of Appeals seemingly answered that question when it dismissed a wrongful discharge claim asserted by an employee who was covered by a collective bargaining agreement:

> *Nees* is distinguishable ... It involved an employe who was hired "at will," that is, an employe who was not covered by a labor contract and whose employment generally could be terminated by her employer at any time and for any cause. The issue in *Nees* was whether there are instances in which the employer's reason or motive for discharging an "at will" employee harms or interferes with an important public interest and, therefore, justifies compensation to the employe. Lacking access to a labor contract grievance procedure, such an employe would be without a remedy if she could not bring an action for wrongful discharge. That is not the case here. Plaintiff was not an employe hired "at will."

Had the court stopped there, its reasoning would prevent Draper from asserting a claim for wrongful discharge. However, the court then entered into a discussion of the "strong federal policy to encourage and support collective bargaining agreements and their

grievance procedures." *Id.* Although suggesting that the contract grievance procedures were the employee's "exclusive remedy," the court ultimately did not dismiss the action for failure to state a claim, but dismissed it because the employee had not exhausted the grievance procedure, *id* at 115, 659 P.2d 436, thus leaving open the possibility that the employee could later assert such a claim.

Draper has cited a few cases in which the Oregon courts permitted an employee to pursue a claim for common law wrongful discharge even though the facts indicate that the employee also had an employment contract. However, as discussed below, in none of these cases did the Oregon courts directly confront the question of whether a wrongful discharge claim is available to an employee who already has an adequate contractual remedy.

In *Hirsovescu*, 113 Or.App. 145, 831 P.2d 73, a former employee brought an action for breach of contract and common law wrongful discharge against a non-profit corporation and its board of directors individually. After the jury found for the plaintiff, the claims against the corporation settled and only the individual directors appealed. The Court of Appeals held that the individual directors could not be liable for breach of a contract the plaintiff had made with the corporation, but affirmed the jury verdict on the wrongful discharge claim. Based on this outcome, Draper argues that she, too, can assert a claim for wrongful discharge. However, in their assignments of error, the directors did not question whether the availability of an adequate contractual remedy precluded the former employee from also maintaining a claim for wrongful discharge. Indeed, the directors did not even question whether they were proper defendants in an action for wrongful discharge. *Cf Schram*, 146 Or.App. at 426, 934 P.2d 483 (employer is the only proper defendant). Accordingly, this court attributes little precedential value to *Hirsovescu*.

A case more closely on point is *Shockey*, 313 Or. 414, 837 P.2d 505. In *Shockey*, a terminated municipal employee brought an action against the city alleging he had been

discharged for circulating a petition protesting proposed changes in work rules. The city's Civil Service Board found that he had been wrongly discharged and reinstated him with back pay. The employee then filed a lawsuit seeking additional damages for, *inter alia*, common law wrongful discharge. The trial court granted a directed verdict in favor of the city because the employee failed to establish the wrongful basis for the discharge. On appeal, the city asserted that the court lacked subject matter jurisdiction over the claim because the complaint,. in essence, alleged "an unfair labor practice for which the Public Employees Collective Bargaining Act [PECBA], ORS 243.650 to 243.782, provides his exclusive remedy." *Id* at 418, 837 P.2d 505. In the city's view, since the collective bargaining agreement forbade discharging an employee without just cause, a wrongful discharge constituted a violation of the collective bargaining agreement over which the Employment Relations Board ("ERB") had exclusive jurisdiction.

The Oregon Supreme Court disagreed. Quoting *Brown*, the court applied the general rules for determining whether the legislature specifically intended to abrogate a remedy, framing the question in terms of whether the Oregon legislature specifically intended to foreclose common law remedies by enacting the PECBA. *Id* at 419–21, 837 P.2d 505. Again, however, the city failed to assign error to, and the court did not directly address, the more basic question of whether a tort claim for wrongful discharge is even available to an employee who not only has contractual remedies, but has successfully invoked those remedies and been reinstated with back pay. The court may have recognized this failure by carefully noting that it was addressing only those particular assignments of error asserted by the city and did not mean to intimate that the employee necessarily had pled and proven all elements of a valid claim for wrongful discharge. *Id* at 423 n. 7, 837 P.2d 505. Thus, *Shockey* is not particularly helpful.

A case presenting facts substantially similar to *Shockey* is *Moustachetti v. State of Oregon*, 319 Or. 319, 877 P.2d 66 (1994). After a state employee was terminated, he invoked the grievance procedures of the collective bargaining agreement. An arbitrator

reinstated him with back pay. The employee then brought an action for wrongful discharge seeking compensation for emotional distress. The trial court dismissed the action because the state Workers' Compensation Law provided the exclusive remedy. The Oregon Supreme Court rejected that rationale, but once again failed to address the underlying question of whether an employee covered by an employment contract and collective bargaining agreement can also maintain an action for wrongful discharge. Consequently, *Moustachetti* does not answer the question before this court.

Because a wrongful discharge claim depends upon the inadequacy of other remedies to protect certain public policy interests, it is not appropriate to simply ask whether an employee has a contract remedy. Instead, the proper question is whether the contract remedy is adequate. It can be argued that a contract remedy is always inadequate because it does not permit recovery of damages for emotional distress or punitive damages. *See Keltner v. Washington County*, 310 Or. 499, 800 P.2d 752 (1990) (declining to modify rule to permit damages for emotional distress); *Farris v. United States Fid. & Guar. Co.*, 284 Or. 453, 456, 587 P.2d 1015 (1978) (punitive damages not available for breach of contract). *Cf McKenzie v. Pacific Health & Life Ins. Co.*, 118 Or.App. 377, 381–82, 847 P.2d 879 (1993) (damages may be available for emotional distress caused by physical harm resulting from a breach of contract), *rev. dismissed*, 318 Or. 476, 869 P.2d 859 (1994). However, in this court's view, the question is not whether the existing remedy is "the best possible remedy" or "identical to the tort remedy" but merely whether it is sufficient to "adequately protect the employment related right." *Carlson*, 103 Or.App. at 193, 796 P.2d 1216. From that viewpoint, a contract remedy may well be adequate.

In *Holien*, 298 Or. 76, 689 P.2d 1292, the court determined that reinstatement and back pay were not an adequate remedy for the injury allegedly sustained, based on the uniquely personal nature of the injury given the facts of that specific case. Economic damages did not adequately capture the kind of harm inflicted by such conduct. *Holien* does not stand for the proposition that reinstatement and back pay are always inade-

quate remedies to compensate an employee for a wrongful discharge, although that implication has appeared as dictum in some opinions. See, *e.g., Shockey,* 313 Or. at 421, 837 P.2d 505.[6]

The contractual remedy is surely inadequate when the contract permits the employee to be terminated at will. An at-will employee may have an oral or even a written employment contract, and may sue his or her employer for breach of contract for failure to pay wages or other reasons, but has no right to sue for breach of contract when fired. Therefore, an at-will employee has no adequate contract remedy to deter a termination in violation of public policy. The Oregon courts have so assumed when creating the wrongful discharge remedy to impose liability upon an employer who fires an at-will employee under certain circumstances. However, even an employee who is not at-will may have an inadequate contract remedy if, for instance, the contract is for a short duration or restricts the employee's remedies in the event of a breach to such a degree that the public policy in question is unlikely to be adequately protected.

Analyzing the adequacy of the contract remedy may lead to a disparity between two employees who are fired for the same reason. For instance, an at-will employee fired for serving on a jury may be able to recover greater damages under the tort theory of a wrongful discharge than another employee (who cannot be terminated without just cause) fired for the same reason can recover under a breach of contract theory. However, the employee who cannot be terminated without just cause has a contract remedy for the unlawful termination and may be able to recover attorney fees under the contract. She also has other contract benefits denied to the at-will employee, such as greater job security, which may outweigh the disparity in recoverable damages.

Through the grievance procedure of her CBA, Draper was able to obtain backpay and reinstatement. Although her contract was for only one year, which severely limits her potential damages for frontpay, she resigned after being reinstated and has not alleged that she was constructively discharged. Therefore, the adequacy of the frontpay remedy is not an issue *per se* in this case. Draper does attempt to recover an analogous remedy by creatively seeking damages for her "impaired earning capacity" resulting from emotional distress. Assuming such damages are recoverable, which is questionable, then her contract remedy may be inadequate, but the answer to that question must wait another day.

This court has grave doubts as to whether an employee who has an adequate contractual remedy may also recover damages by way of a wrongful discharge claim, but there is no need to definitively resolve that issue here. The dispositive question is whether another remedy adequately protects the public interest asserted by Draper. As discussed above, Draper has an adequate remedy under § 1983. In addition, she was reinstated with back pay pursuant to the remedies in her collective bargaining agreement. Draper also has a remedy under the state Whistleblower Law, ORS 659.510 and .530.[7] Conse-

---

6. This court observes that under Oregon law, an employer may wrongly terminate an employee for deplorable reasons and in a callous manner, yet so long as those reasons do not fall within the narrow scope of the tort of wrongful discharge, the employee ordinarily will be limited to her contractual or statutory remedies (if any) regardless of how egregious the reasons for the discharge or how much emotional distress the employee sustains as a result of being terminated, and will have no remedy at all in the absence of an employment contract or specific statutory prohibition. *Cf Madani v. Kendall Ford, Inc.,* 312 Or. 198, 204–06, 818 P.2d 930 (1991) (employee allegedly discharged for refusing to expose himself to customer); *Patton,* 301 Or. at 122–24, 719 P.2d 854 (employee allegedly discharged for refusing to end relationship); *Watte*

*v. Edgar Maeyens, Jr., M.D., P.C,* 112 Or.App. 234, 828 P.2d 479 (1992) (employees berated and then discharged.)

7. The parties have cited conflicting authorities on whether the remedy for violation of ORS 659.510 is, by itself, an adequate remedy that precludes an additional remedy in tort. *Cf McCool,* 97 Or.App. at 540, 777 P.2d 1013; *Farrimond,* 103 Or.App. at 567, 798 P.2d 697; and *Messer v. Portland Adventist Medical Center,* 707 F.Supp. 449 (D.Or.1989). None of these cases is directly on point. There is not even a consensus on what remedies are available in Oregon to redress a violation of ORS 659.510, as is discussed below. The court also notes that any remedy available to Draper under the Whistleblower Law is in addition to those remedies that she has in contract

quently, regardless of whether Draper's contractual remedy alone is sufficient, together these remedies are more than adequate to protect the public interest in question without an additional tort remedy for wrongful discharge. This court therefore recommends that defendants' motion for summary judgment be granted as to the Third Claim.

Ultimately, however, the federal courts are not the proper forum for resolving these and other [8] ambiguities and inconsistencies in the case law defining the tort of wrongful discharge in Oregon. That task is the responsibility of the Oregon courts or the Oregon Legislature. Until Oregon ·clarifies the applicable legal standards, this court will continue to interpret and apply the existing case law as best it can.[9]

### III. *Violation of § 1983 (First Claim)*

#### A. *Qualified Immunity*

■ The individual defendants contend they are entitled to qualified immunity from the § 1983 claim. Their brief recites the usual boilerplate standards, but does not discuss the clearly established law at the time or apply that law to the facts of this case.

The essence of Draper's § 1983 claim is that defendants unlawfully retaliated against, terminated, and blackballed her because of her protected speech. The parameters of the First Amendment rights of public employees have been discussed in numerous opinions from the United States Supreme Court, the Ninth Circuit, and the District of Oregon. *See, e.g., Pickering,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; *Connick,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708; *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Hyland v. Wonder,* 972 F.2d 1129, 1137 (9th Cir.1992) and 117 F.3d 405, 410–11 (9th Cir.1997) (right was clearly established by 1983); *Roth*

*v. Veteran's Admin.,* 856 F.2d 1401, 1405 (9th Cir.1988); *Fender v. City of Oregon City,* 811 F.Supp. 554 (D.Or.1993), *aff'd* 37 F.3d 1505 (9th Cir.1994) (table); *Shockey,* 313 Or. 414, 837 P.2d 505. A reasonable public official would have been cognizant of those rights during the time period in question.

Because neither side has furnished this court with more than a general description of the speech' at issue and the conduct of the defendants, the court cannot at this time make a final determination whether that speech is protected or whether each defendant's conduct (if proven) violated Draper's clearly established rights. Since defendants bear the burden of establishing their entitlement to qualified immunity, *Collins v. Jordan,* 102 F.3d 406, 412 (9th Cir.1996), and have not done so, this court recommends denial of their motion for partial summary judgment on the § 1983 claim. This recommendation does not preclude the court from revisiting this issue at trial after a better record has been established.

#### B. *Respondeat Superior*

■ The School District contends it cannot be liable under § 1983 for the acts of the individual defendants. However, Draper is not attempting to hold the District vicariously liable on a *respondeat superior* theory for the actions of subordinates. Rather, Draper alleges that improper acts (including the wrongful termination) were undertaken by the District's governing body, and the board members had reason to know their actions were wrongful. *Cf· Fender,* 811 F.Supp. at 559–60 (rejecting similar argument).

Defendants' reliance upon *Board of the County Commissioners of Bryan County v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), is misplaced. In *Bryan*

---

and under § 1983. Therefore, the issue presented in this case is not whether the Whistleblower Law, by itself, is an adequate remedy.

**8.** *Compare Lundervold v. Core–Mark Int'l, Inc.,* CV 96–1542–AS (DOr Jan. 16, 1997) (ORS 652.355(2) is an adequate remedy for retaliatory discharge for asserting' wage claim, that precludes common law wrongful discharge claim) with *Nash v. Resources, Inc.,* 1997 WL 594472, (D.Or April 2, 1997) (reaching opposite conclusion). The judges of this district have each grap-

pled with similar disputes over the proper application of cases such as *Holien* and *Carlson* and of the rules governing this tort in general.

**9.** Neither party has requested certification of any questions to the Oregon Supreme Court, perhaps because of the length of time required to obtain a response. Nor has either party suggested that this court, in its discretion, decline to exercise supplemental jurisdiction pursuant to 28 USC § 1367(c).

*County,* the causation element was very attenuated because the county did not directly cause the injury. Rather, the Sheriff allegedly failed to conduct a proper background investigation before hiring an employee, who in turn committed an intentional tort against a third party. The Supreme Court concluded that the municipality was not liable because the plaintiff had not shown that, through its deliberate conduct, the municipality was the "moving force" behind the injury. *Id.* at 1386. The Court carefully distinguished those circumstances where the causation element is not similarly attenuated:

> [P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Id.* at 1389. That is precisely what Draper alleges here.

Draper also contends the school board was aware of misconduct directed towards her and ratified that conduct. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion); *Trevino v. Gates,* 99 F.3d 911, 918, 920–21 (9th Cir.1996). While it will not be easy for Draper to succeed on her ratification theory, the record presently in front of this court does not preclude her from trying. *Cf Gillette v. Delmore,* 979 F.2d 1342, 1347–48 (9th Cir.1992) (discussing standards to establish ratification by policymaker of subordinate's decision).

## IV. *Violation of Whistleblower Law (Second Claim)*

Draper's second claim is for violation of the state Whistleblower Law, ORS 659.510 and 659.530. The individual defendants

move for summary judgment because, in their view, the OTCA makes the School District the only proper defendant on this claim. Draper responds that the individual defendants were acting outside the scope of their duties, hence the OTCA is not applicable to this claim. In the course of analyzing that argument, this court found it necessary to explore the larger question of the relationship between the Whistleblower Law and the OTCA.[10] The court therefore requested supplemental briefing.

The court has identified three issues concerning the interplay between the OTCA and the Whistleblower Law: (1) whether Draper's claim is subject to the damage cap and other limitations imposed by the OTCA, (2) whether her claim is barred by the statute of limitations, and (3) whether the School District is the only proper defendant. Once again, this court must decide difficult questions of state law that the state courts have yet to address.

### A. *Relationship Between Statutes*

Adopted in 1989, the Whistleblower Law was added to ORS Chapter 659. The latter resembles the quintessential "camel designed by a committee." It is a labyrinthine patchwork of often-inconsistent provisions cobbled together at various times by different authors and so extensively cross-linked internally as to yield different answers to the same questions, depending upon which of multiple paths the reader follows. Since plaintiff is alleging a violation of ORS 659.510, the analysis begins with ORS 659.530, which provides that:

> In addition to appeal proceedings of ORS 240.560 for a state employee and any comparable provisions for employees of political subdivisions and remedies available under ORS 659.035, an employee alleging a violation of ORS 659.510 may bring a civil action for appropriate injunctive relief or damages, or both, within 90 days after the occurrence of the alleged violation. The action may be filed in the circuit court of the county in which the alleged violation occurred, or the county in which the com-

---

10. The breadth of the remedies available under the Whistleblower Law is also relevant to the

adequacy of the alternative remedies available to Draper in lieu of a wrongful discharge claim.

plainant resides. If damages are awarded, the court shall award actual damages or $250, whichever is greater.

Plaintiff therefore has three different (yet cumulative) routes potentially available to her to redress a violation of ORS 659.510, as set forth above. Pursuant to the express language of ORS 659.530, Draper could file a civil action within 90 days after occurrence of the alleged violation. Her remedies would be limited to injunctive relief and either actual damages or $250, whichever is greater.

Alternatively, ORS 659.530 permits Draper to avail herself of the "remedies available under ORS 659.035." The scope of those remedies is unclear. ORS 659.035 was amended in 1989 to add subsection (1)(b) making it an "unlawful employment practice" for a "public employer to violate ORS 659.510," the provision that Draper claims the defendants violated. As a remedy for such violation, ORS 659.035(2) provides that employees may file complaints, and the section "shall be enforced by the Commissioner of the Oregon Bureau of Labor and Industries ["BOLI"] in the same manner as provided in ORS 659.040 to 659.110 and 659.121 for the enforcement of an unlawful employment practice." The "manner as provided" in ORS 659.121 is a civil action filed by an aggrieved person.

A violation of ORS 659.035(1)(b) "subjects the violator to the same civil and criminal remedies and penalties as provided in ORS 659.010 to 659.110, 659.121 and 659.470 to 659.545." In addition, such violation permits a person to "seek compensatory damages or $250, whichever is greater." ORS 659.035(3). The term "compensatory damages" is more expansive than "actual" damages permitted by ORS 659.530 for a violation of ORS 659.510. In Oregon, the term "actual" damages ordinarily is synonymous with "special" damages, while the term "compensatory" damages is equivalent to "general" damages and includes noneconomic components such as "emotional distress." Consequently, the remedy provided by ORS 659.035(3) is broader than the remedy created by ORS 659.530.

As noted above, the cross-reference in ORS 659.035(2) incorporates ORS 659.121, which in turn sets forth two different sets of remedies for a civil action, depending upon which statute allegedly was violated. For an unlawful employment practice prohibited by ORS 659.035 (and other listed statutes), ORS 659.121(1) limits the employee's remedy to equitable relief, including reinstatement and back pay, and attorney fees. Unlike the next subsection, ORS 659.121(2), which specifies the remedies for violations of other listed statutes, ORS 659.121(1) does not permit an award of compensatory or punitive damages or a jury trial. *See Wincer v. Independent Paper Stock Co.*, 48 Or.App. 859, 618 P.2d 15 (1980).

Although ORS 659.530 seemingly requires that an action be filed within 90 days from the occurrence, ORS 659.121(3) allows an action to be filed within one year from the occurrence (if no BOLI complaint has been filed) or else within 90 days after receiving a right-to-sue letter from BOLI, which in turn must be within one year after a complaint was lodged with BOLI, which in turn must have been filed "no later than one year after the alleged unlawful employment practice." ORS 659.040(1); 659.095(1), 659.121(3). Thus, depending upon which route one follows, the statute of limitations may be as little as 90 days or as much as two years and 90 days. Similarly, one section requires that an action be brought within 90 days, while the other section permits the action to be filed within one year even in the absence of a BOLI complaint.

A related issue is the interaction between Chapter 659 and the OTCA. Under the OTCA, the public body (*i.e.*, the School District) is the only proper defendant unless the individual employees were not acting within the course and scope of their duties. ORS 30.265(1). By contrast, the individual employees would appear to be proper defendants in an action under ORS 659.510 and 659.530. *See* ORS 659.505(3) (defining the term "public employer" to include any person authorized to act on behalf of the public body with respect to control, management, or supervision of any employee). In addition, the OTCA contains an express cap on damages. ORS 30.270. The Whistleblower Law does not. ORS 659.530 (and cross-references therein).

In *Brinkley v. Oregon Health Sciences University*, 94 Or.App. 531, 766 P.2d 1045 (1988), *rev. denied*, 307 Or. 571, 771 P.2d 1021 (1989), the Court of Appeals held that a claim for violation of Chapter 659 is a "tort" for purposes of the OTCA, requiring dismissal for failure to comply with the OTCA notice provisions of ORS 30.275. *See also McCabe v. State*, 314 Or. 605, 611, 841 P.2d 635 (1992); *Demaray v. State Dept. of Environ. Quality*, 127 Or.App. 494, 502–03, 873 P.2d 403 (1994) (en banc). However, *Brinkley* is not dispositive of the issues here because it carefully emphasized the absence of conflict between the two laws:

> Nothing prevents a plaintiff from giving notice under ORS 30.275 and filing an action under ORS 659.121. Plaintiff does not argue that he could not comply with the notice provisions of ORS 30.275 and also sue under ORS 659.121.

*Brinkley*, 94 Or.App. at 536, 766 P.2d 1045.

Similarly, no conflict was present in either *McCabe* and *Demaray*. By contrast, several potential conflicts exist between the OTCA and the remedies that may be available under Chapter 659. In addition, with a few enumerated exceptions, ORS 30.275(8) establishes a two-year statute of limitations for filing an action, "notwithstanding any other provisions of ORS chapter 12 or other statute providing a limitation on the commencement of an action . . ." The instant action therefore presents the sort of direct conflict between the statutory schemes that the Court of Appeals was able to dodge in *Brinkley* and several other cases.

After many hours of futilely tracing the circular cross-references of ORS Chapter 659, this court is little closer than when it started to discerning the intent of the Oregon Legislature regarding how these various provisions interact, what are the statute of limitations, who are proper defendants, and what remedies are available for a violation of ORS 659.510.[11] Until the Oregon Legislature sees fit to revise Chapter 659 to clarify these issues, this court somehow must give effect to this confusing statutory scheme.

**B. Damages**

■ If ORS 659.530 were a self-contained statute, it would be easy to ascertain what damages are recoverable for a violation of ORS 659.510, namely, injunctive relief and actual damages or $250, whichever is greater. However, the remedy set forth in ORS 659.530 is *"[i]n addition to . . . remedies available under ORS 659.035."* Thus, it appears that a prevailing plaintiff also may recover those remedies provided by ORS 659.035, including "compensatory" damages pursuant to ORS 659.035(3). In addition, since ORS 659.035(2) in turn cross-references the remedies in ORS 659.121, a prevailing plaintiff may be entitled to equitable remedies of reinstatement and back pay, as well as attorney fees.

However, punitive damages do not appear to be a permissible remedy for a violation of ORS 659.510. Although the cross-reference in ORS 659.035(2) is to ORS 659.121 in its entirety, ORS 659.121(1) specifically designates the remedies for a violation of ORS 650.035. The next subsection, ORS 659.121(2), contains a list of certain other statutes for which punitive damages is a permissible remedy, but does not list ORS 659.035 or .510.[12] The only reasonable reading of ORS 659.121, therefore, is that ORS 659.121(1) governs a violation of ORS 659.510, which precludes an award of punitive damages. The court also observes that a law permitting an award of punitive damages against a municipality is the exception rather than the rule. *Cf.* ORS 30.270(2) (forbidding award of punitive damages against public body in action under OTCA); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (punitive damages not available in § 1983 action against a municipality). Absent express statutory authorization, this court will not assume that the legislature intended to permit an award of punitive damages against a public body for violations of ORS 659.510.

The court also concludes that Draper's claim for violation of ORS 659.510 is not

---

11. The parties have not provided this court with any legislative history that may shed light on the legislative intent.

12. ORS 659.121(2) does reference ORS 659.550, another portion of the Whistleblower Law, but that is not the statute under which Draper is suing.

subject to the damages cap established by ORS 30.270. When the legislature enacts a specific act that is repugnant to or in conflict with a prior statute, but contains no language expressly repealing or preserving the prior statute, the latter is impliedly repealed "to the extent of the repugnance." *State ex rel Huddleston v. Sawyer*, 324 Or. 597, 604–05, 932 P.2d 1145 (1997); *State v. Shumway*, 291 Or. 153, 160–62, 630 P.2d 796 (1981). Repeal by implication is disfavored, and the courts will strive to harmonize the two statutes when feasible. *Id.; Lilly v. Gladden*, 220 Or. 84, 95, 348 P.2d 1 (1959).

Unlike *Brinkley*, this case presents a direct conflict between the OTCA and the remedies provided by statute for a violation of ORS 659.510. The Whistleblower Law, including ORS 659.510 and .530, was enacted after establishment of the damages cap in ORS 30.270. Unlike the common law tort remedies, the Whistleblower Law is specifically directed at public employers. ORS 659.530 provides that the court "shall" award actual damages or $250, whichever is greater. The award is mandatory. There is no mention of the damages cap under the OTCA. ORS 659.530 also permits an employee to pursue the remedies established by ORS 659.035, which expressly include compensatory damages. Again, there is no mention of any damage cap.

There is no principled way to reconcile these conflicts without assuming that in enacting the Whistleblower Law, the Oregon Legislature—unlike Dr. Seuss's Horton the Elephant [13]—did not say what it meant and did not mean what it said. There would be no point in the Legislature creating remedies against a public body with one hand only to take them away with the other. Moreover, had the Legislature intended for whistleblower claims to be subject to the damage cap and other limitations of the OTCA, it could easily have specified such a result.

This court concludes that Draper's claim for violation of ORS 659.510 is exempt from the cap upon compensatory damages in ORS 30.270; however, Draper may not recover punitive damages on this claim. If the Oregon Legislature disagrees with this court's interpretation of the statute, then it should amend the law to unequivocally express its intent.

### C. *Statute of Limitations*

The statute of limitations for claims against public bodies within the scope of the OTCA is two years, notwithstanding any contrary law. ORS 30.275(8). By contrast, ORS 659.530, which was enacted after the OTCA, allows only 90 days for the commencement of an action under that section for violation of ORS 659.510. However, ORS 659.530 also permits an employee to pursue remedies under ORS 659.035, which incorporates two additional (and different) limitations periods by way of ORS 659.121(3) and the cross-references contained therein. Thus there is a clear conflict between these statutory schemes.

Draper filed a BOLI complaint on January 26, 1996, which was more than 90 days but less than one year after her termination on September 15, 1995. Draper received a "right-to-sue" letter dated December 13, 1996. She filed this action on March 10, 1997, which was more than 90 days but less than two years after her termination, but not more than 90 days after issuance of the right-to-sue letter. Therefore, Draper's claim would be barred by the 90 day limitations period in ORS 659.530, but not by the longer limitations period of the OTCA or by the limitations periods in ORS 659.121(3).

The court concludes that the OTCA, ORS 30.275(8), does not govern the statute of limitations for a violation of ORS 659.510, since the legislature specified a different limitations period in the later-enacted Whistleblower Law. Furthermore, Draper cannot avail herself of the remedy expressly created by ORS 659.530, since she did not file her action within the allotted time of 90 days after her termination. However, ORS 659.530 preserves for Draper an alternative path by way of ORS 659.035 and the remedies therein. While some questions may remain regarding the specific claims that were preserved in her BOLI complaint, the latter

---

**13.** "I meant what I said
And I said what I meant....
An elephant's faithful

One Hundred per cent!"
Dr. Seuss, *Horton Hatches the Egg* (1940).

was filed within one year after her termination and this action was filed within 90 days after issuance of the right-to-sue letter. Accordingly, Draper may pursue her remedies under ORS 659.035.

### D. *Proper Defendants*

■ The remaining question is whether this claim can be maintained against the individual defendants. The Whistleblower Law arguably implies, but never directly says, that individual supervisors can be a proper defendant in an action under that statute. *See* ORS 659.505(3)(b) (defining "public employer"). However, the OTCA expressly provides that when a tort claim is brought against public officials for actions taken within the course and scope of their duties, the public body shall be substituted as the only defendant. ORS 30.265(1). Given the absence of any express provision to the contrary in the Whistleblower Law, this court concludes that these two provisions do not directly conflict, and ORS 30.265(1) applies to claims brought under the Whistleblower Law. *See also Demaray,* 127 Or.App. at 502, 873 P.2d 403 (reaching same result, though without considering the presence or absence of a conflict).

■ Draper denies that the individual defendants were acting within the scope of their duties, but the test is not very stringent. An act by an employee is within the scope of his or her employment or duties if the act (1) occurred substantially within the time and space limits authorized by the employment, (2) the employee was motivated, at least in part, by a purpose to serve the employer, and (3) the act was of a kind for which the employee was hired to perform. *Chesterman v. Barmon,* 305 Or. 439, 442, 753 P.2d 404 (1988).

■ Only the second prong is in dispute here. Whether a party has acted within the scope of employment presents a jury question if there is a genuine factual dispute. *McGanty v. Staudenraus,* 321 Or. 532, 539 n. 3, 901 P.2d 841 (1995); *Mekkam v. Oregon Health Sciences Univ.,* 126 Or.App. 484, 493, 869 P.2d 363 (1994), *vacated on other grounds,* 319 Or. 623, 879 P.2d 180, *on remand,* 132 Or.App. 470, 473, 888 P.2d 1093

(1995) (reaffirming prior decision on this point).

In several cases, the Oregon courts have suggested that an act is not outside the course and scope of employment unless the employee acts "solely" for his own purposes or against the interests of his employer. *See, e.g., Sims v. Software Solutions Unlimited, Inc.,* 148 Or.App. 358, 364–65, 939 P.2d 654 (1997); *Schram,* 146 Or.App. at 429, 934 P.2d 483; *Boers v. Payline Systems, Inc.,* 141 Or.App. 238, 243, 918 P.2d 432 (1996). However, in each of these cases the question presented was whether an employee could be held liable for intentionally interfering with a contract to which his employer was a party. The courts understandably are wary of encouraging such claims in all but the most egregious circumstances. It is unclear whether the Oregon courts would apply the "solely" test in other circumstances, *e.g.,* to hold the employer liable for other types of misconduct by an employee. It also is unclear whether "solely" is to be construed literally such that an employee whose actions were almost entirely motivated by his own interests nonetheless is deemed to have been acting within the course and scope of his employment so long as his act was even slightly motivated by serving the interests of the employer.

Regardless of which standard is applied, this court entertains serious doubts regarding plaintiff's ability to establish that the actions of the individual defendants were not motivated, at least in part, by what they perceived (correctly or otherwise) to be the interests of their employer. Nevertheless, the court is not prepared to make that determination as a matter of law on the record presented here. Rather, the court prefers to hear the testimony presented at trial and then re-visit the issue by way of a motion for directed verdict.

### RECOMMENDATIONS

For the reasons set forth above, this court recommends that defendants' motion (# 29) for partial summary judgment be GRANTED in part and DENIED in part as follows:

1. The individual defendants should be granted summary judgment on the wrongful

discharge claim because their employer is the only proper defendant;

2. The School District should be granted summary judgment on the wrongful discharge claim because plaintiff already has adequate statutory and contractual remedies;

3. The prayer for punitive damages on the Whistleblower Law claim should be stricken; and

4. The motion for summary judgment should be denied as to the remaining claims and defenses.

January 15, 1998.